Kevin Don KREYSSIG, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–95–00185–CR.

Court of Appeals of Texas,
Texarkana.

Argued Oct. 8, 1996.

Submitted Oct. 31, 1996.

Decided Nov. 1, 1996.

Ebb B. Mobley, Longview, for appellant.

C. Patrice Savage, Gregg County Asst. District Attorney, Longview, for appellee.

Before CORNELIUS, C.J., and GRANT and STARR, JJ.

## OPINION

CORNELIUS, Chief Justice.

Kevin Don Kreyssig was convicted of murder. The jury set his punishment at forty years' confinement. On appeal, Kreyssig contends that the trial court erroneously admitted in evidence three written statements and two photographs. He further contends that Section 19.02(d) of the Texas Penal Code

is unconstitutional. We reject these contentions and affirm the conviction.

On October 9, 1994, Kreyssig, accompanied by Shane Graves, Tommy Cain, and Brandon Tinney, lured John Gordon into their truck. Kreyssig was upset with Gordon and had decided to "teach him a lesson." There was evidence that Kreyssig had been drinking for two or three days before Gordon's murder.

They drove to a railroad trestle over the Sabine River near Longview. Everyone got out of the truck. As they walked along the tracks, Cain struck Gordon in the head from behind with a bat. Gordon fell. Then Kreyssig and the others repeatedly struck Gordon with the bat. Kreyssig repeatedly kicked him. They then pushed Gordon off the trestle into the Sabine River. The primary cause of death was drowning, but a forensic pathologist testified that Gordon's injuries alone were sufficient to cause his death.

After the murder, Kreyssig and Graves went to Jamie Dawn Appleton's apartment. They were joined by Cain and Tinney. Kreyssig told Appleton they had beaten Gordon with a baseball bat and pushed his body into the river. They cleaned the blood off themselves and changed clothes. Graves cleaned the blood off the baseball bat. Kreyssig asked Appleton if she would clean their blood stained clothing. The four then left the apartment.

Kreyssig returned to Appleton's apartment about ten minutes later. Officers from the Longview police department arrived shortly thereafter. Appleton gave police permission to search her apartment, and the bat and bloody clothing were recovered. Kreyssig was arrested for Gordon's murder.

Kreyssig gave three written statements to Deputy Cecil Shelton. Shelton testified that when he first met Kreyssig, it appeared that he had been drinking but was not intoxicated. Kreyssig was read his *Miranda*[1] rights and chose to remain silent and requested an attorney.

A few hours later, Kreyssig's stepfather, Erwin Garcia, came to the sheriff's office. Garcia asked to speak to Shelton. Shelton

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

told Garcia that three other persons had also been arrested and they said Kreyssig had masterminded the murder. Shelton explained to Garcia that because Kreyssig had requested an attorney, the police could not talk to him.

Garcia asked what would be the best thing for Kreyssig to do. Shelton responded "[I]t would be in the boy's best interest to talk to us and tell us his side of the story. We would be glad to listen." He told Garcia that they could not talk to Kreyssig unless he initiated the contact and sent a note stating that he wanted to waive his right to an attorney. Shelton then made arrangements for Kreyssig to call the front desk, an area away from Shelton's office, and talk with Garcia.

Later that morning, Kreyssig sent a handwritten, signed note to Shelton indicating that he wanted to talk. Kreyssig was brought to Shelton's office and again read his *Miranda* warnings. Kreyssig signed a waiver of rights form and stated that he understood them. He then gave Shelton a written statement detailing his involvement in Gordon's murder.

Kreyssig also gave two other written statements. On October 10, 1994, he asked to talk to Shelton. He was brought to Shelton's office and again read his *Miranda* warnings. He completed a waiver form and stated that he understood his rights. Shelton answered Kreyssig's questions and also questioned him about the clothes he was wearing at the time of the murder, asking him to identify them. Kreyssig identified several pieces as belonging to him and initialed the bags holding his clothing. Kreyssig then signed another written statement detailing these facts.

On October 11, 1994, Kreyssig again sent word that he wanted to talk to Shelton. He was brought to Shelton's office and again given his *Miranda* warnings. He signed another waiver form and said he understood his rights. Shelton asked several questions about a white Dallas Cowboy cap that was found in the pickup used in the commission of the crime. Kreyssig identified the cap as belonging to Gordon and signed a written statement to that effect.

Kreyssig first contends that the trial court erred in failing to suppress his written statements. The last two statements were properly admitted in evidence because Kreyssig failed to object to them. Tex.R.App.P. 52(a). In the hearing on the motion to suppress the first statement, defense counsel stated, "I am not real sure I could object to the last two statements made by Mr. Kreyssig, but I certainly do object to the one made October the 9th, 1994." Counsel did object to the October 9 statement, but when the State offered the October 10 and 11 statements, defense counsel affirmatively stated, "No objection, your Honor."

■ When a pretrial motion to suppress evidence is overruled, the accused is not required to object at trial to preserve error. *Gearing v. State*, 685 S.W.2d 326, 329 (Tex. Crim.App.1985). The affirmative acceptance of previously challenged evidence, however, waives any right to claim error in its admission. *Jones v. State*, 833 S.W.2d 118, 126 (Tex.Crim.App.1992), *cert. denied*, 507 U.S. 921, 113 S.Ct. 1285, 122 L.Ed.2d 678 (1993). Given defense counsel's affirmative acceptance of the two later statements, Kreyssig's counsel clearly waived any right to complain of their admission. *Marin v. State*, 851 S.W.2d 275, 280 (Tex.Crim.App.1993).

■ The other statement Kreyssig challenges is the October 9 statement in which he admits to participating in Gordon's murder. As long as the record supports the trial court's findings concerning the voluntariness and the propriety of taking the statement, we are not at liberty to disturb them. *Banda v. State*, 890 S.W.2d 42, 51–52 (Tex.Crim.App. 1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 2253, 132 L.Ed.2d 260 (1995). Reversal is required only for an abuse of discretion, e.g., where the trial court either applied an erroneous legal standard or no reasonable view of the record could support the trial court's conclusion under the correct law. *DuBose v. State*, 915 S.W.2d 493, 497–98 (Tex.Crim.App. 1996). Kreyssig contends that the facts do not support the trial court's conclusion that he effectively waived his right to counsel. We disagree.

The right to counsel is invoked once a person indicates a desire to speak to an

attorney or have an attorney present during questioning. *Edwards v. Arizona,* 451 U.S. 477, 481–82, 101 S.Ct. 1880, 1883–84, 68 L.Ed.2d 378, 384 (1981); *Dinkins v. State,* 894 S.W.2d 330, 351 (Tex.Crim.App.), *cert. denied,* —— U.S. ——, 116 S.Ct. 106, 133 L.Ed.2d 59 (1995). Once a suspect has invoked his right to counsel, all interrogation by the police must cease until counsel is provided or until the suspect himself reinitiates conversation. *Dinkins v. State,* 894 S.W.2d at 349.

We are required to perform a two-step analysis. First, we determine whether the accused actually invoked his right to counsel. *Smith v. Illinois,* 469 U.S. 91, 95–97, 105 S.Ct. 490, 492–94, 83 L.Ed.2d 488, 494 (1984). Second, we examine how police obtained the statement. Statements obtained after the suspect has invoked his right to counsel are admissible only if the court finds that the accused initiated the discussion and he knowingly and intelligently waived the rights he had invoked. *Smith v. Illinois,* 469 U.S. at 95, 105 S.Ct. at 492–93; *Lucas v. State,* 791 S.W.2d 35, 46 (Tex.Crim.App.1989). The State has the burden of establishing a valid waiver. *Upton v. State,* 853 S.W.2d 548, 553 (Tex.Crim.App.1993). The statement is admissible if all these factors are met. *Etheridge v. State,* 903 S.W.2d 1, 18 (Tex.Crim. App.1994).

No one disputes that Kreyssig clearly expressed his desire for an attorney. The State contends, however, that Kreyssig subsequently initiated contact with the officers and waived his previously invoked rights. Kreyssig disputes this and argues that his subsequent contact with police was the result of Shelton's conversation with Garcia and not self-initiated. In response to Garcia's question, "What would be the best thing to do?" Shelton told Garcia that it would be in Kreyssig's best interest to talk to the officers and tell his side of the story. The State acknowledges the conversation took place and that Shelton made arrangements for Garcia to talk to Kreyssig.

■ Police may not threaten, trick, or cajole an accused into waiving his constitutional rights. *Nash v. State,* 477 S.W.2d 557, 563 (Tex.Crim.App.), *cert. denied,* 409 U.S. 887, 93 S.Ct. 191, 34 L.Ed.2d 144 (1972). The evidence here, however, does not demonstrate actions of that character.

We abated this appeal so the trial court could make written findings of fact and conclusions of law concerning the circumstances surrounding the taking of the October 9 statement. We have now received those findings. The trial court found that Kreyssig voluntarily contacted Shelton, fully understanding his rights not to speak and to have an attorney if he wished, and after having been repeatedly warned of his rights not to speak, voluntarily and freely gave the October 9 statement. The evidence supports the trial court's findings. There is no evidence that Kreyssig was tricked or cajoled into waiving his rights.

■ The Fifth Amendment protects individuals from self-incrimination and denial of due process. U.S. CONST. amend. V. The Bill of Rights is designed to protect citizens from state action. *See, e.g. Miller v. Fenton,* 474 U.S. 104, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985); *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969); *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965); *Malloy v. Hogan,* 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964); *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); *Wolf v. Colorado,* 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949). The determining factor in deciding whether an accused's rights have been violated is the presence of police coercion. *Colorado v. Connelly,* 479 U.S. 157, 163–64, 107 S.Ct. 515, 519–20, 93 L.Ed.2d 473, 482 (1986). Absent such a finding, there is no basis for concluding that state action is involved. *Id.*

Shelton's conversation with Garcia does not constitute state action. Shelton did not initiate contact with Garcia, nor did he request that Garcia perform a specific task or function. There is no indication that Shelton intended for Garcia to act on his statement or any indication that Garcia actually followed Shelton's advice. Garcia's actions were those of a private person. Nor do Garcia's actions fall within the protections

afforded an accused by *Miranda*. *Miranda* was adopted to protect criminal suspects' rights against self-incrimination made while in custody and without full knowledge of their rights not to speak. *Miranda v. Arizona*, 384 U.S. at 467, 86 S.Ct. at 1624. *Miranda* is limited to custodial police interrogation. *United States v. Henry*, 447 U.S. 264, 273 n. 11, 100 S.Ct. 2183, 2188 n. 11, 65 L.Ed.2d 115, 124 n. 11 (1980).

Even if Garcia persuaded Kreyssig to waive his earlier request for counsel, his actions did not constitute police interrogation.

Kreyssig made a voluntary, knowing, and intelligent decision to initiate contact with Shelton. Kreyssig, as evidenced by his initial assertion of his Fifth Amendment rights, understood that he did not have to talk to police. In addition, he was given the *Miranda* warnings, signed a waiver form, and stated that he understood his rights before giving Shelton his statement admitting involvement in Gordon's murder. Kreyssig was aware that the State could, and would, use anything he said against him to secure a conviction. Kreyssig's actions constitute a valid waiver of his right to counsel. Under these circumstances, the police could properly resume the interrogation. The October 9 statement was properly admitted into evidence. Even if it was inadmissible, the two later, unobjected-to statements were sufficient to prove Kreyssig's part in the murder.

Kreyssig next contends that the trial court erred in admitting into evidence two photographs of Gordon. The admissibility of a photograph is within the sound discretion of the trial court. *Ramirez v. State*, 815 S.W.2d 636, 647 (Tex.Crim.App.1991).

Kreyssig's assertion that the photographs are not relevant has not been preserved for review. In order to preserve error for review, the accused must have objected at trial, stating the specific grounds, and must have obtained a ruling on the objection. Tex. R.App.P. 52(a). At trial, Kreyssig objected to the State's introduction of these photographs on the basis of their probative value and that they were inflammatory. He did not object on relevancy grounds. Relevancy was not raised at trial and cannot be considered on appeal.

Kreyssig argues that the photographs' probative value was substantially outweighed by the danger of unfair prejudice. We disagree.

In weighing the probative value of a photograph against the danger of unfair prejudice to the defendant, we must consider the inherent tendency that the photograph may encourage resolution of a material issue on an inappropriate emotional basis. *Fuller v. State*, 829 S.W.2d 191, 206 (Tex.Crim.App. 1992), *cert. denied*, 508 U.S. 941, 113 S.Ct. 2418, 124 L.Ed.2d 640 (1993); *Moss v. State*, 860 S.W.2d 194, 195 (Tex.App.—Texarkana 1993, no pet.). Factors we consider when making this balancing decision are the gruesomeness of the photographs, their detail, composition, size, and whether they are black and white or color. *Moss v. State*, 860 S.W.2d at 195.

An abuse of discretion occurs when the probative value of the photograph is small and its inflammatory potential great. *Ramirez v. State*, 815 S.W.2d at 647. Photographs are generally admissible if verbal testimony of the matters depicted in the photographs is also admissible. *Id.*

The photographs in question were limited in number and used by the State to illustrate and explain the testimony of the forensic pathologist about the nature of Gordon's injuries and the cause of death. The photographs accurately reflected his testimony. Testimony describing wounds the victim received is admissible evidence. *Ramirez v. State*, 815 S.W.2d at 647.

Kreyssig calls the photographs gruesome. Admittedly, the body's presence in the Sabine River for several days had an adverse effect on its condition, but that does not mean that the photographs were so appalling that a juror of normal sensitivity, after viewing them, would encounter difficulty in rationally deciding the critical issues of the case. *Fuller v. State*, 829 S.W.2d at 206. The photographs clarify and support observations and conclusions about the victim's injuries and nature of death making the existence of a critical fact needed to decide the

issue more probable than it would be without such evidence. *Fuller v. State,* 829 S.W.2d at 206; *Moss v. State,* 860 S.W.2d at 196. Their probative value is not outweighed by the danger of unfair prejudice.

 Kreyssig's final contention is that his conviction cannot stand because TEX.PENAL CODE ANN. § 19.02(d) (Vernon 1994) is unconstitutional. He contends that Section 19.02(d) violates the Fourteenth Amendment's due process clause because it places the burden on him to raise the issue of whether he caused Gordon's death under the influence of sudden passion and requires him to prove the fact by a preponderance of the evidence. We disagree.

The Texas Court of Criminal Appeals has considered and rejected a similar argument. In *Barnes v. State,* 876 S.W.2d 316 (Tex. Crim.App.), *cert. denied,* —— U.S. ——, 115 S.Ct. 174, 130 L.Ed.2d 110 (1994), Barnes was convicted of capital murder and sentenced to death. Barnes alleged the trial court erred in its instructions during punishment regarding mitigating circumstances because the trial court did not place the burden of proof on the State to negate the mitigating circumstances. *Barnes v. State,* 876 S.W.2d at 329. The court noted that all that is constitutionally required in instances where mitigating evidence is a factor is a vehicle by which the jury can consider and give effect to the mitigating circumstances. *Id.* The court also noted that the United States Supreme Court, citing *Walton v. Arizona,* 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990), held that it was not unconstitutional to place a burden on the defendant to establish mitigating circumstances by a preponderance of the evidence. *Barnes v. State,* 876 S.W.2d at 330. This is exactly the situation before us.

For the reasons stated, we affirm the judgment.

STARR, J., not participating.