# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-00-00657-CR

**Jose Sanchez Martinez, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT
### NO. 00-2205, HONORABLE BOB PERKINS, JUDGE PRESIDING

Appellant Jose Sanchez Martinez appeals his conviction for intoxication manslaughter while operating a motor vehicle in a public place. Tex. Pen. Code Ann. § 49.08 (West Supp. 2001).[1] The jury found appellant guilty and assessed his punishment at twenty years' imprisonment and a fine of $10,000. The jury also found that appellant used a deadly weapon in the commission of the offense—a motor vehicle.

### Points of Error

Appellant advances two points of error. First, appellant contends that the trial court erred in denying his motion to suppress. Second, appellant urges that the trial court erred in denying

---

[1] The current code provision is cited for convenience. Appellant was prosecuted under Act of May 29, 1993, 73d Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3586, 3697 (Tex. Pen. Code § 49.08, since amended).

his requested jury charge on the lesser included offense of criminal negligent homicide. We will affirm the conviction.

**Background**

The sufficiency of the evidence to sustain the conviction is not challenged. A brief summary of the facts will place the points of error in proper prospective.[2] In the afternoon of February 19, 1999, about 3:00 p.m., eight-year-old Adriana Gutierrez was crossing a street in front of a school bus when she was struck by a pickup truck driven by appellant. The impact caused the child to fly through the air and land some ninety-two feet away. Adriana died from her injuries early the next morning. The cause of death was established as cranial cerebral trauma. The injuries included a fractured skull, bleeding in the brain, a pancreas separated in half, a deep laceration of the

[2] Other matters should also be noted. The indictment in pertinent part alleged that appellant on or about February 19, 1999:

> . . . did then and there, by accident and mistake, while operating a motor vehicle in a public place while intoxicated, in that Jose Sanchez Martinez did not have the normal use of his mental and physical faculties by reason of the introduction of alcohol into his body, and had an alcohol concentration of .10 or more, and by reason of such intoxication, cause the death of an individual, Adrianna Gutierrez, by driving said motor vehicle into the said Adrianna Gutierrez.

At the time of the alleged offense, the statutory definition of "intoxicated" included (A) not having the normal use of mental or physical faculties by reason of the introduction of alcohol into the body or (B) having an alcohol concentration of 0.10 or more. Act of May 29, 1993, 73d Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3586, 3691 (Tex. Pen. Code § 49.01(2)(B), since amended). The current statutory definition of "intoxicated" includes "(B) having an alcohol concentration of 0.08 or more." Tex. Pen. Code Ann. § 49.01(2)(B) (West Supp. 2001).

There are two separate statutory definitions of "intoxicated" stated in the disjunctive. In the instant indictment, both definitions or theories of "intoxicated" were alleged conjunctively. The trial court's charge tracked the indictment.

2

liver, and numerous fractures of her bones. There was no dispute that appellant was the driver of the truck and that he was highly intoxicated at the time. His "per se" intoxication was supported by the results of at least one valid blood test and his "loss of faculties" intoxication was sustained by the testimony of his friend and passenger in the truck, his apartment complex manager and apartment maintenance supervisor, a nurse, police officers, and numerous eye witnesses to the accident. Witnesses reported that appellant pulled his truck to the left, away from the line of automobiles behind the stopped bus, and struck the child and then another motor vehicle. Appellant offered no evidence at the guilt-innocence stage of the trial.

## Motion to Suppress

In his first point of error, appellant contends that the trial court erred in denying his motion to suppress evidence. Apparently, appellant refers to his first motion to suppress evidence obtained from an analysis of the blood specimen taken from him at the hospital after the accident at the direction of police officers. The taking of a blood specimen is considered a search and seizure within the meaning of the Fourth Amendment to the United States Constitution. *Schmerber v. California*, 384 U.S. 757, 769 (1966); *Combest v. State*, 981 S.W.2d 958, 960-61 (Tex. App.—Austin 1998, pet. ref'd). In his motion to suppress, appellant alleged that he was illegally arrested and there was a warrantless search and seizure of his blood specimen to which he did not voluntarily and knowingly consent.

The State's brief has directed us to a pretrial hearing on the motion. Austin Police Officers John Hardage and Erique Coronado testified that they each arrived separately at Brackenridge Hospital after appellant had been taken there. They each testified that appellant was

3

not under arrest when he voluntarily consented to take a blood test[3] and signed a written consent form.[4] Hardage testified that he told appellant several times before the form was signed that appellant had the right to refuse to have a blood specimen taken. Appellant was repeatedly informed that he was not under arrest. After the consent form was signed, a hospital nurse took a blood specimen from appellant and gave it to Officer Hardage. Hardage telephoned an assistant district attorney and checked on the condition of the victim in the hospital. Hardage then asked Officer Coronado to perform a horizontal gaze nystagmus test on appellant, a procedure in which Coronado was certified. Only after Coronado stated that appellant had failed the test was appellant placed under arrest by Hardage.

Appellant, who was twenty-one years old at the time, testified that he had graduated from high school and had a "two years computer degree." He did not remember the events at the hospital very well other than Officer Coronado asking him if he knew what had happened. He did not remember "what I signed" and added "that's not the way I sign my name." Appellant stated that at the time he had no understanding of his legal rights. He could not say that the officers were "not telling the truth."

Appellant's testimony lent little support to his allegations. He relied upon the officers' testimony that they were in uniform and armed, though there was no display of weapons. He calls

---

[3] *Cf.* Tex. Transp. Code Ann. §§ 726.011-724.019 (West 1999); *Badgett v. State*, 42 S.W.3d 136 (Tex. Crim. App. 2001) (concerning procedure after arrest with regard to consent to search).

[4] Consent for a search is an exception to the requirement for a warrant and probable cause. *Schneckloath v. Bustamente*, 412 U.S. 218, 219 (1973).

attention to the possible lack of full *Miranda*[5] warnings and that Officer Coronado had placed a leg iron on appellant. Coronado testified that he had placed the leg iron on appellant shortly after Coronado's arrival at the hospital for appellant's protection as well as his own "and others." Coronado explained that this action was only for temporary detention purposes.

At the conclusion of the suppression hearing, the trial court did not rule, but asked for trial briefs which are in the record. We, however, have not been directed to any adverse ruling on the suppression motion and our search of the record has not revealed one. It is not clear whether the trial court made no ruling, decided to carry the issue along with the trial, or that the appellate record is incomplete.

When a pretrial motion to suppress evidence is *overruled*, an accused is not required to object again at trial in order to preserve error. *Gearing v. State*, 685 S.W.2d 326, 329 (Tex. Crim. App. 1985); *In re L.M.*, 993 S.W.2d 276, 285 (Tex. App.—Austin 1999, pet. denied) (juvenile delinquency proceedings); *Kreyssig v. State*, 935 S.W.2d 886, 888 (Tex. App.—Texarkana 1996, pet. ref'd). A motion to suppress evidence, however, is nothing more than a specialized objection to the admissibility of evidence. *Galitz v. State*, 617 S.W.2d 949, 952 n.10 (Tex. Crim. App. 1981); *State v. Reed*, 888 S.W.2d 117, 119 (Tex. App.—San Antonio 1994, no pet.). Thus, a motion to suppress must adhere to the requirements of an objection. Tex. R. App. P. 33.1; *Bradley v. State*, 960 S.W.2d 791, 800 (Tex. App.—El Paso 1997, pet. ref'd); *Mayfield v. State*, 800 S.W.2d 932, 935 (Tex. App.—San Antonio 1990, pet. ref'd). To preserve error for review, a party must secure an adverse

---

[5] *Miranda v. Arizona*, 384 U.S. 346 (1966).

ruling to his objection even if it is timely and specific. Tex. R. App. P. 33.1(2)(a). Failure to make a proper objection and secure an adverse ruling waives error. *Id.*; *Oestrick v. State*, 939 S.W.2d 232, 235 (Tex. App.—Austin 1997, pet. ref'd). It would thus appear that appellant did not preserve any alleged error in the overruling of his motion to suppress evidence.

At the trial on the merits, Officers Hardage and Coronado testified without objection. The chain of the blood specimen taken from appellant at Officer Hardage's request was traced from nurse Elizabeth Chenault to Hardage to Glen Carl Harbison, a chemist with the Austin Police Department. Harbison testified that he ran two gas chromatography tests on the whole blood specimen shown to have been taken at 5:06 p.m. on February 19, 1999. He related that the blood alcohol concentration or level in the specimen was shown to be 0.24, and that in his opinion the individual whose blood was tested was intoxicated at the time. The only trial objection was directed to the admission of State's exhibits 48 and 48a (a cardboard tube and a vial of blood). This objection, based on "voluntariness," was overruled.

Even if it can be said that the motion to suppress evidence was in fact overruled and such ruling was in error—an abuse of discretion on an evidentiary matter—no reversal of the conviction is required.

**Jury Charge Based on Article 38.23(a)**

First, it is observed that the trial court submitted the issue of the voluntariness of the consent to take the blood specimen in a question to the jury in the court's charge. *See* Tex. Code

6

Crim. Proc. Ann. art. 38.23(a) (West Supp. 2001).**⁶**  Apparently concluding that the evidence raised the issue of consent, the trial court instructed the jury that the burden of proof was upon the State to show beyond a reasonable doubt that the blood test was taken in accordance with the law, and that the consent to take the test was freely and voluntarily given by appellant, and that no threat, duress, or physical violence was used to induce appellant to consent.  The trial court told the jury that unless the State sustained its burden of proof the blood test evidence could not be considered by the jury. The jury was also instructed that if it had a reasonable doubt as to whether or not appellant had voluntarily consented to the taking of blood, the benefit of the doubt must be given to appellant.

**Another Blood Test**

Moreover, we observe that the results of another blood analysis were admitted into evidence without objection.  The results of the two tests were approximately the same—0.24 blood alcohol concentration.   The blood specimen, which appellant complains was taken without his consent, was extracted at 5:06 p.m. on February 19, 1999.  Earlier on the same day, about 4:15 p.m., nurse Elizabeth Chenault took a blood specimen from appellant at Brackenridge Hospital upon instructions from an emergency room doctor for medical purposes and treatment.  Billy Smith, a

---

**⁶** Article 38.23(a) provides:

> (a) No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.  In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

hospital laboratory employee, collected the specimen at 4:34 p.m. and delivered it to the laboratory. At 4:50 p.m., Wendy Mathews, a medical technologist at the hospital laboratory, began her analysis of that blood specimen before the other blood specimen was extracted. Mathews's test showed that a blood serum alcohol level of 253 milligrams per deciliter. Cheryl Peyton, a forensic toxicologist for the Texas Department of Public Safety, was called to testify and interpolate the results reached by Mathews. Peyton explained how the hospital blood sample results, recorded in milligrams per deciliter, translated to 0.264 grams per 100 milliliters, and that this result converted to a 0.22 to 0.24 whole blood alcohol concentration or level.[7]

All of this testimony as to the blood specimen taken by hospital personnel independent of any State action[8] was admitted without objection. Complaints on appeal must comport with trial objections or nothing is presented for review. *Fuller v. State*, 827 S.W.2d 919, 928 (Tex. Crim. App. 1992); *Rezac v. State*, 782 S.W.2d 864, 870 (Tex. Crim. App. 1990). Further, the improper admission of evidence does not generally result in reversal when the same fact or substantially the

---

[7] *Cf. Reidweg v. State*, 981 S.W.2d 399, 403-04 (Tex. App.—San Antonio 1998, no pet.) (discussing serum and whole blood alcohol tests).

[8] The United States and Texas constitutional guarantees against unreasonable searches and seizures apply only when the government conducts the search and seizure. *State v. Comeaux*, 818 S.W.2d 46, 49 (Tex. Crim. App. 1991). Article 38.23(a) is not applicable to a private person who conducts a search if that person has not violated federal and state constitutional provisions or laws and is not an agent of the government. *See Carroll v. State*, 911 S.W.2d 210, 219-23 (Tex. App.—Austin 1995, no pet.); *see also Crunk v. State*, 934 S.W.2d 788, 793 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd) (holding that defendant must establish private person obtained evidence in violation of law). More recently, article 38.23(a), an exclusionary statute, has been interpreted to apply to a person who illegally obtains evidence although not acting as an agent of the government. *See State v. Johnson*, 939 S.W.2d 586, 587-88 (Tex. Crim. App. 1986).

same facts are proven by unobjected-to testimony. *See Leday v. State,* 983 S.W.2d 713, 718 (Tex. Crim. App. 1998); *Rogers v. State*, 853 S.W.2d 29, 35 (Tex. Crim. App. 1993); *Miranda v. State*, 813 S.W.2d 724, 739 (Tex. App.—San Antonio 1991, pet. ref'd). Here, the results of the two separate blood tests were approximately the same based on blood specimens taken near the same time.

In *Weaver v. State*, 721 S.W.2d 495 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd), the court held that the second blood sample was not taken at the State's request and its test results showing intoxication were admissible. This evidence rendered harmless any error in the admission of the first blood test and its results. *Id*. at 496.

The trial court charged the jury conjunctively on both theories of "intoxicated" rather than disjunctively. The evidence, not challenged by appellant, was sufficient to support the conviction under either theory or both theories. *Reidweg v. State*, 981 S.W.2d 399, 404-05 (Tex. App.—San Antonio, 1988 pet. ref'd); *Ray v. State*, 749 S.W.2d 939, 944 (Tex. App.—San Antonio 1988, pet. ref'd); *see also Owen v. State*, 905 S.W.2d 434, 438 (Tex. App.—Waco 1995, pet. ref'd). The evidence of appellant's intoxication was overwhelming and undisputed.

Our examination of the record in its entirety leads us to conclude that the alleged error, if any, did not affect a substantial right of the appellant. *See* Tex. R. App. P. 44.2(b); Tex. R. Evid. 103. A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (citing *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). The first point of error is overruled.

9

**Requested Jury Instruction**

In his second point of error, appellant contends that the trial court erred in refusing a requested jury charge on the lesser included offense of criminal negligent homicide. *Reidweg*, 981 S.W.2d at 406-07, has been decided contrary to appellant's contention. Intoxication manslaughter does not require proof of a culpable mental state. It is, by statute, a strict liability crime. Proof of the offense of criminal negligent homicide requires a greater culpable mental state than intoxication manslaughter. Thus, proof of criminal negligent homicide requires proof of different facts than required to establish intoxication manslaughter and is not a lesser included offense. *Id*. at 406-07. *Accord*, *Gowans v. State*, 955 S.W.2d 787, 792-93 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd). Appellant's second point of error is overruled.

The judgment is affirmed.

_____

John F. Onion, Jr., Justice

_____

Before Justices Kidd, Puryear and Onion[*]

Affirmed

Filed: October 4, 2001

Do Not Publish

10

* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).