273 S.W.3d 703 (2008)
In the Interest of K.Y. and K.Y., Minor Children.
No. 14-07-00866-CV.
Court of Appeals of Texas, Houston (14th Dist.).
November 6, 2008.
*705 Kim Richardson, Freeport and Shayna Lynn Rosen Taibel, Angleton, TX, for appellants.
Jeri Yenne and Erinn Genelle Brown, Angleton, TX, for appellees.
Panel consists of Justices YATES, GUZMAN, and BROWN.

OPINION
LESLIE B. YATES, Justice.
Appellant J.Y. appeals from a judgment terminating his parental rights to his minor children, K.Y. and K.Y. In five issues, appellant argues that appellee the Texas Department of Family and Protective Services (DFPS) failed to allege new facts when it refiled the termination suit against him and that the trial court lacked jurisdiction, failed to join a necessary party, and erred in admitting autopsy photographs of appellant's stepdaughter, whom he was convicted of murdering. We affirm.

I. Factual and Procedural Background
In 1999, B.F. and her daughter by a previous relationship, A.F., began living with appellant. During the six years that they lived together, appellant and B.F. had two children together, K.Y. and K.Y. B.F. testified at trial that although appellant never harmed K.Y. and K.Y., he mistreated A.F. Apparently believing her to be possessed by the devil, appellant called A.F. derogatory names and forced her to copy hundreds of pages from the Bible while standing up. Appellant would not allow A.F. to eat with the family and allowed her to eat only one meal per day, usually consisting of beans and sardines, which he forced her to eat quickly. Appellant required A.F. to stay in her room and not interact with the rest of the family. He was often physically abusive to A.F., including whipping her buttocks to the point of bleeding and hitting her repeatedly all over her body, including her head and abdomen.
A.F. died in December of 2003, at the age of twelve. B.F. testified that A.F. had not been feeling well that day. That evening, appellant went into A.F.'s room, and B.F. heard mumbling and some thumps. *706 Appellant then came out and told B.F. not to panic and that A.F. was not breathing. Appellant packed some belongings and left the house, taking all the phones with him. Several hours later, B.F. called 911, and A.F. was dead when emergency personnel arrived. Appellant was arrested shortly thereafter. According to the chief medical examiner, A.F. died as a result of multiple blunt force trauma, with the contributory cause of death being chronic child abuse. A.F. was severely malnourished and emaciated, several of her internal organs had been damaged, she had multiple layers of scarring on her buttocks, and she was bruised literally from head to toe.
After being notified that the cause of A.F.'s death was chronic child abuse, DFPS removed K.Y. and K.Y. from the home. They were placed with a foster family, with whom they have lived since and who want to adopt them. On December 30, 2003, DFPS filed an original petition seeking conservatorship of the children and termination of both parents' parental rights. On April 19, 2005, B.F. voluntarily relinquished her parental rights to the children. On June 21, 2005, the district court dismissed the remaining claims against appellant without prejudice. DFPS refiled the suit to terminate appellant's parental rights on June 22, 2005. In October 2005, appellant was convicted of murdering A.F. and sentenced to life in prison.[1] On September 14, 2006, the second termination suit against appellant was dismissed without prejudice. On September 15, 2006, DFPS filed suit for a third time to terminate appellant's parental rights. The case proceeded to trial in February 2007, and a jury determined that termination of appellant's parental rights was warranted and in the children's best interest. This appeal followed.

II. Jurisdiction

A. Home State Jurisdiction
In his second issue, for the first time on appeal, appellant challenges the trial court's subject matter jurisdiction. He argues that the trial court lacked jurisdiction because the children moved to Oklahoma and thus Texas was no longer their home state. Subject matter jurisdiction is a question of law, to which we apply a de novo standard of review. Tex. Dep't of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 226 (Tex.2004); Salaymeh v. Plaza Centro, LLC, 264 S.W.3d 431, 435 (Tex.App.-Houston [14th Dist.] 2008, no pet. h.). Subject matter jurisdiction may be raised for the first time on appeal. Salaymeh, 264 S.W.3d 431, 435.
Section 152.201(a)(1) of the Family Code provides that a Texas court has jurisdiction to make an initial child custody determination if Texas is the home state of the child on the date of the commencement of the proceeding or was the home state of the child within six months before the commencement of the proceeding and the child is absent from Texas but a parent or person acting as a parent continues to live in Texas. TEX. FAM.CODE ANN. § 152.201(a)(1) (Vernon 2002). "Home state" means the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding. Id. § 152.102(7). At all times during this proceeding, the children's parents lived in Texas. Thus, the central question is whether Texas was the children's home state on the date of, or within six months before, commencement of this proceeding. See In re Burk, 252 S.W.3d 736, 740 (Tex. App.-Houston [14th Dist.] 2008, orig. proceeding [mand. denied]).
*707 DFPS filed the third suit to terminate appellant's parental rights on September 15, 2006. Appellant claims the children moved to Oklahoma a year earlier, meaning Texas could not have been their home state, but this is not supported by the record. The children were born and lived in Texas until May of 2006. Their foster father moved to Oklahoma during the fall or winter of 2005. However, the children and their foster mother continued to live in Texas for several more months, and they visited Oklahoma on a monthly basis until May 2006 when the family obtained permission from DFPS to permanently move to Oklahoma. Appellant insists that the whole family actually moved together and that the Texas residence was merely a fiction. There is no evidence in the record to support such a claim. The only evidence shows that the foster mother and the children maintained their house and possessions in Texas and lived in Texas, with frequent visits to Oklahoma, until May 2006. Such visits do not establish that the children moved from Texas, thereby creating gaps in the six month home state jurisdiction time frame. See In re Schoeffel, 268 Ill.App.3d 839, 206 Ill.Dec. 59, 644 N.E.2d 827, 830 (1994) (stating that brief interstate visits by child do not defeat home state jurisdiction); In re Brown, 203 S.W.3d 888, 892-93 (Tex.App.-Fort Worth 2006, no pet.) (finding Missouri, not Texas, was child's home state, despite several short visits to Texas during six months before proceeding); cf. Powell v. Stover, 165 S.W.3d 322, 323, 328 (Tex.2005) (citing Schoeffel and holding that ten month move out of state defeated home state jurisdiction in Texas). Thus, as of April 2006, the children had lived in Texas for at least six continuous months, and because April is within six months before the commencement of this proceeding in September 2006, Texas was the children's home state, and the trial court had subject matter jurisdiction. We overrule appellant's second issue.

B. Interlocutory Appeal
In his third issue, appellant claims the trial court did not have jurisdiction to proceed with trial in February 2007 because the First Court of Appeals still had appellate jurisdiction over the case at that time. The trial court entered an order extending temporary orders on September 28, 2006, naming DFPS as temporary managing conservator. Appellant filed a notice of appeal from this interlocutory order, and the appeal was sent to the First Court of Appeals. However, because appellant failed to perfect the appeal by paying the filing fees or establishing indigency, on January 11, 2007 the First Court issued a memorandum opinion dismissing appellant's appeal. See Yost v. Brazoria County Children's Protective Servs., No. 01-06-00907-CV, 2007 WL 79400 (Tex. App.-Houston [1st Dist.] Jan. 11, 2007, no pet.) (mem.op.). Trial on the third suit to terminate appellant's parental rights was held on February 17, 2007, but the mandate from the First Court's dismissal order did not issue until July 18, 2007. Appellant claims the trial court did not have jurisdiction to conduct trial, rendering the final judgment void, because when he appealed the trial court's September 28, 2006 order to the First Court of Appeals, the trial court lost jurisdiction over the cause during the pendency of the appeal, which he contends extends until the appellate mandate is issued.
Texas Rule of Appellate Procedure 29.5 provides that when, as in this case, an appeal from an interlocutory order is pending, the trial court retains jurisdiction of the case and may make further orders and may proceed with a trial on the merits. Thus, the mere pendency of the interlocutory appeal did not deprive the trial *708 court of jurisdiction to conduct the trial. Rule 29.5 further provides that the trial court must not make an order that (1) is inconsistent with any appellate court temporary order or (2) interferes with or impairs the jurisdiction of the appellate court or the effectiveness of any relief sought or that may be granted on appeal. The trial court's final judgment is not inconsistent with any appellate court temporary orders, and it did not prevent the appellate court from reviewing complaints made regarding the trial court's temporary orders. See Tanguy v. Laux, 259 S.W.3d 851, 855 (Tex. App.-Houston [1st Dist.] 2008, no pet.); Ahmed v. Shimi Ventures, L.P., 99 S.W.3d 682, 690 (Tex.App.-Houston [1st Dist.] 2003, no pet.). Therefore, the trial court's conducting a trial and entering a final judgment did not interfere with or impair the appellate court's jurisdiction or effectiveness or relief sought, and, under Rule 29.5, the trial court retained jurisdiction during the interlocutory appeal and properly proceeded to trial on the merits prior to issuance of the mandate.[2]See Tanguy, 259 S.W.3d at 855; Ahmed, 99 S.W.3d at 690. Accordingly, we overrule appellant's third issue.

III. Family Code Section 263.401
In his first issue, appellant maintains the trial court erred in reappointing DFPS as temporary managing conservator of the children after DFPS filed the third termination suit because DFPS failed to satisfy the legal requirements of section 263.401 of the Texas Family Code. See TEX. FAM.CODE ANN. § 263.401 (Vernon Supp.2008). When DFPS files a suit affecting the parent-child relationship, section 263.401 allows a twelve month period in which to prosecute the suit, with a single 180 day extension. Id. § 263.401(a), (b). If a final order is not rendered within this time frame, the suit must be dismissed without prejudice. Id. § 263.401(a), (c). Once a suit is dismissed without prejudice, DFPS may refile the suit asserting the same grounds for termination originally alleged. See In re M.N.G., 147 S.W.3d 521, 528 (Tex.App.-Fort Worth 2004, pet. denied); In re Ruiz, 16 S.W.3d 921, 927 (Tex.App.-Waco 2000, orig. proceeding). However, DFPS cannot maintain temporary custody of the children without alleging new facts to support the termination. See In re M.N.G., 147 S.W.3d at 528; In re L.J.S., 96 S.W.3d 692, 694 (Tex.App.-Amarillo 2003, pet. denied); In re Ruiz, 16 S.W.3d at 927. If a subsequent petition alleges new facts to support the termination, DFPS can maintain temporary custody. See In re M.N.G., 147 S.W.3d at 528-29 (affirming termination of parental rights in second suit based on new facts and termination ground alleged in subsequent petition); In re L.J.S., 96 S.W.3d at 694 (noting that "we and other courts have recognized that a second suit can be initiated if new facts exist").
The second termination suit was dismissed without prejudice on September 14, 2006. The next day, DFPS filed the third termination suit, and the trial court signed an order reappointing DFPS as temporary managing conservator of the children. Appellant claims the trial court erred because DFPS failed to allege new facts when it refiled the termination suit. DFPS argues that it did allege new facts *709 because the second petition alleged that appellant was incarcerated on charges of murdering A.F. while the third petition alleged that appellant had been convicted of the murder and requested termination on an additional ground based on this conviction. See TEX. FAM.CODE ANN. § 161.001(1)(Q) (Vernon Supp.2008) (authorizing termination of parental rights in certain circumstances involving parent's conviction of offense). We agree with DFPS that these new facts and the additional ground for termination based on these facts were sufficient to allow DFPS to refile and maintain temporary custody of the children. Appellant argues that nothing new that would justify termination actually occurred in the single day between the dismissal of the second suit and the refiling of the third suit. However, we compare the allegations in the petitions, and the allegations clearly changed in the third petition. See In re L.J.S., 96 S.W.3d at 694 (affirming termination of parental rights based on subsequent suit, stating that new facts alleged in subsequent suit arose after the first suit was filed). Appellant emphasizes that the issue of his responsibility for A.F.'s death was already before the trial court in the second suit, but being convicted of her murder and sentenced to life imprisonment is substantially different than only being accused. Accordingly, we conclude that the new allegations in the third termination suit were sufficient to justify the trial court's reappointment of DFPS as temporary managing conservator, and we overrule appellant's first issue.

IV. Admission of Autopsy Photographs
In his fourth issue, appellant claims the trial court erred in admitting autopsy photographs of A.F. We review a trial court's decision to admit photographs for an abuse of discretion. Gallo v. State, 239 S.W.3d 757, 762 (Tex.Crim.App.2007). We will not overturn such a decision if it falls within the zone of reasonable agreement. Rayford v. State, 125 S.W.3d 521, 529 (Tex. Crim.App.2003).
At issue are seven of the nine autopsy photographs of A.F. that the trial court admitted during the medical examiner's testimony. Those photographs are in color and are printed on eight and a half by eleven inch plain paper. Five photographs show the state of A.F.'s body at the time of her death, including the thinness of her limbs and overall body, her lack of muscle tone, and extensive bruising on her head, face, arms, legs, and torso. The other two photographs depict removed internal organs that had been damaged by physical abuse to her abdomen. The medical examiner used these photographs in his testimony to explain that A.F. was severely malnourished and had suffered extensive and repeated instances of physical abuse, some of which directly caused her death.
Appellant first contends that the photographs were inadmissible because they are irrelevant. Evidence is relevant if it has the tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. TEX.R. EVID. 401. Generally, photographs are admissible if oral testimony as to the matters depicted in the photographs is also admissible. Gallo, 239 S.W.3d at 762. Appellant argues that the photographs are irrelevant because they do not establish that he, as opposed to A.F.'s mother, inflicted these injuries. Even assuming the photographs are not relevant for this purpose, they are relevant to show an ongoing pattern of mistreatment, including severe physical abuse and malnutrition, and to help the jury to understand the medical examiner's testimony on these issues. See In re C.J.F., 134 S.W.3d 343, 356-57 (Tex.App.-Amarillo *710 2003, pet. denied) (finding no abuse of discretion in admitting autopsy photographs in parental rights termination case to demonstrate ongoing pattern of severe abuse and to assist medical examiner in explaining this to jury); see also Saldano v. State, 232 S.W.3d 77, 101 (Tex. Crim.App.2007) (noting medical examiner appropriately used autopsy photographs to fully explain victim's injuries); Rayford, 125 S.W.3d at 530 (same). Appellant asserts the photographs are not relevant to show the extent of A.F.'s injuries because the medical examiner's testimony had already established this. However, visual images of injuries are relevant, and testimony regarding those injuries does not eliminate this relevance. See Gallo, 239 S.W.3d at 762 ("A visual image of the injuries appellant inflicted on the victim is evidence that is relevant to the jury's determination. The fact that the jury also heard testimony regarding the injuries depicted does not reduce the relevance of the visual depiction."); Chamberlain v. State, 998 S.W.2d 230, 237 (Tex.Crim.App.1999) ("We reject the premise that visual evidence accompanying oral testimony is cumulative of the testimony or that it is of insignificant probative value. Visual evidence accompanying testimony is most persuasive and often gives the fact finder a point of comparison against which to test the credibility of a witness and the validity of his conclusions."). The trial court did not abuse its discretion in determining that the autopsy photographs are relevant.
Appellant contends that even if the photographs are relevant, the trial court erred in admitting them under Texas Rule of Evidence 403 because they are graphic and cumulative. Rule 403 provides that relevant evidence can be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations such as needless presentation of cumulative evidence. Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial. Gallo, 239 S.W.3d at 762. Factors to consider when evaluating whether the probative value of photographs is substantially outweighed by the danger of unfair prejudice include the number of photographs, their size, whether they are in color, their gruesomeness, and whether the body is clothed. Id.
Appellant complains that all of the photographs should have been excluded under Rule 403 because they are needlessly cumulative of the medical examiner's testimony explaining A.F.'s injuries. However, as already discussed, these pictures were important to assisting the jury in understanding the medical examiner's testimony, and visual evidence has significant probative value apart from testimonial evidence on the same subject. See Gallo, 239 S.W.3d at 762; Chamberlain, 998 S.W.2d at 237. Appellant also asserts that all of the photographs are cumulative of the documents admitted that show his conviction for murdering A.F. But the details of the type and severity of the abuse inflicted which were not included in the documents showing his convictionare highly probative for the jury's assessment of the risk to the children by maintaining contact with appellant. See In re C.J.F., 134 S.W.3d at 356-57 (finding no abuse of discretion in admitting autopsy photographs of dead child in termination proceeding in part because they were probative regarding endangerment of other child). Appellant makes a final global argument about the photographs; he complains that they could mislead the jury because there was no evidence that he inflicted each and every injury inflicted but the jury could have so believed based on the photographs. The evidence showed that appellant was convicted of inflicting sufficient injuries to kill A.F. The probative value of the photographs *711 to demonstrate her physical condition at the time of her death outweighs the small risk that the jury might be improperly influenced by incorrectly concluding that appellant, rather than someone else, inflicted other injuries as well. See Ramirez v. State, 815 S.W.2d 636, 647 (Tex. Crim.App.1991) ("An abuse of discretion arises only when the probative value of the photograph is small and its inflammatory potential great.").
Exhibit 46 depicts A.F.'s unclothed body from her abdomen to her forehead and shows extensive bruising, emaciation, and sunken eyes, which are shown partially open. Appellant argues that this photograph is unfairly prejudicial because it is graphic and needlessly cumulative of other photographs of A.F.'s injuries. Even if this photograph may be disturbing, that alone does not render it inadmissible. See In re C.J.F. 134 S.W.3d at 356. It does no more than depict the reality of the abuse A.F. sufferedabuse that lead to her death, which appellant was convicted of causing. See Rayford, 125 S.W.3d at 530 ("While the photos may be graphic, they depict the realities of the crime committed."); Chamberlain, 998 S.W.2d at 237 ("The photographs are gruesome in that they depict disagreeable realities, but they depict nothing more than the reality of the brutal crime committed. And it is precisely because they depict the reality of this offense that they are powerful visual evidence...."). Some of the bruises and emaciation shown in Exhibit 46 are visible in other exhibits, but they are depicted from different angles and levels of closeness, and such comparison can provide the jury with additional information about the injuries. See Bacey v. State, 990 S.W.2d 319, 326 (Tex.App.-Texarkana 1999, pet. ref'd) ("When there are two or more pictures that depict the same thing but from different perspectives, the jury can gain information it might not otherwise have when viewing other pictures from other perspectives."). Moreover, no other exhibit more fully demonstrates the overall extent of A.F.'s injuries and physical condition at the time of her death. See Etheridge v. State, 903 S.W.2d 1, 21 (Tex.Crim.App.1994) (finding no abuse of discretion in admitting multiple autopsy photographs showing injuries at different angles, including some close ups, to demonstrate the overall state of the body and to highlight certain injuries); Bacey, 990 S.W.2d at 326 (concluding photograph of murder victim showing body in its entirety not cumulative of other photographs showing specific portions of body). The photograph is not so graphic as to encourage the jury to resolve the case on an emotional or other improper basis. See Saldano, 232 S.W.3d at 101 (finding that autopsy photographs showing multiple gunshot wounds did not cause undue tendency for jury to decide on emotional basis); Kreyssig v. State, 935 S.W.2d 886, 890 (Tex.App.-Texarkana 1996, pet. ref'd) (holding that photographs of victim who had been submerged in river for several days not "so appalling that a juror of normal sensitivity, after viewing them, would encounter difficulty in rationally deciding the critical issues of the case").
Finally, appellant asserts that two photographs showing A.F.'s stomach, esophagus, small bowel, and liver, which had been removed and photographed away from her body, are graphic and unfairly prejudicial. That these organs were cleaned and photographed separate from the body decreases their gruesomeness. See Salazar v. State, 38 S.W.3d 141, 151-52 (Tex.Crim.App. 2001). Further, the medical examiner used these photographs to demonstrate the injuries to A.F.'s organs-injuries that were not visible from the outside-and this evidence was quite probative to explaining these injuries. See Gallo, 239 S.W.3d at 763 (finding that photographs of cracked ribs, underside of scalp, skull, and brain *712 important to show injuries not visible on body's surface); Salazar, 38 S.W.3d at 152 (concluding that photographs of damaged internal organs highly probative to demonstrate internal injuries).
A trial court abuses its discretion in admitting photographs only if their probative value is small and the risk of inflaming the jury is great. See Ramirez, 815 S.W.2d at 647. We cannot say the trial court abused its discretion by concluding that the probative value of the photographs in assisting the medical examiner to explain the cause of A.F.'s death and the repeated, long-term, severe physical abuse and malnutrition she suffered was not substantially outweighed by any risk of unfairly prejudicing the jury. See In re C.J.F., 134 S.W.3d at 356-57; see also Rayford, 125 S.W.3d at 529-30; Salazar, 38 S.W.3d at 151-53.
For these reasons, we overrule appellant's fourth issue.

V. Failure to Join a Necessary Party
In his fifth issue, appellant claims that the termination suit against him should be dismissed because, even though she had already relinquished her parental rights, DFPS failed to serve B.F., the children's mother, a necessary party to the suit. See TEX. FAM.CODE ANN. § 102.009(a)(7) (Vernon Supp.2008) (providing that in suit affecting parent-child relationship, each parent as to whom the parent-child relationship has not been terminated must be served as a necessary party unless process has been waived). A party intending to appeal an order in a suit affecting the parent-child relationship must file with the trial court a statement of points on which the party intends to appeal. See TEX. FAM.CODE ANN. § 263.405(b)(2) (Vernon Supp.2008). Any issue not included in a timely statement of appellate points may not be raised on appeal. In re T.T., 228 S.W.3d 312, 316-17 (Tex.App.-Houston [14th Dist.] 2007, pet. denied). Appellant did not raise the issue of failure to serve a necessary party in his statement of points, and thus we will not consider it.[3] We overrule appellant's fifth issue.
Having overruled of appellant's issues, we affirm the trial court's judgment.
NOTES
[1] See Yost v. State, 222 S.W.3d 865 (Tex.App.-Houston [14th Dist.] 2007, pet. dism'd).
[2] Appellant cites several cases for the proposition that a trial court loses jurisdiction over the cause while the appeal is pending, but those cases involve trial courts that changed or modified the final judgment after appeal had been taken from that final judgment. See, e.g., Robertson v. Ranger Ins. Co., 689 S.W.2d 209, 210 (Tex.1985) (holding trial court did not have jurisdiction to enter consent judgment because appeal from final judgment was still pending). Such cases do not address a trial court's jurisdiction to act while an interlocutory appeal is pending and consequently are not on point.
[3] Appellant also failed to include in his statement of points the jurisdictional issues he raises in his second and third issues. Because these issues go to subject matter jurisdiction, we must nevertheless consider them. See In re J.B.W., 99 S.W.3d 218, 221 (Tex. App.-Fort Worth 2003, pet. denied); see also Salaymeh, 264 S.W.3d 431, 435 (stating that subject matter jurisdiction can be raised for the first time on appeal).