# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-15-00296-CV

**K. G., Appellant**

**v.**

**Texas Department of Family and Protective Services, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT
### NO. D-1-FM-14-002010, HONORABLE GISELA D. TRIANA, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant K.G. ("Kevin"), appeals from the trial court's order finding that termination of his parental rights was in the best interest of his children, K.G. ("Katie") and M.G. ("Michael").[1] Kevin asserts that the trial court was required to dismiss the Department's second suit for termination because the Department failed to allege new facts that had not been alleged in the first petition for termination. He also challenges the legal and factual sufficiency of the evidence supporting the termination of his parental rights. *See* Tex. Fam. Code § 161.001(1)(N), (O), (2). For the reasons that follow, we will affirm the trial court's decision.

---

[1] To preserve the parties' privacy and for convenience, we refer to the children, their father, and their foster family by fictitious names. *See* Tex. Fam. Code § 109.002(d); Tex. R. App. P. 9.8.

**BACKGROUND**

The Department initially removed the children from Kevin in 2012, when Katie was ten and Michael was seven.[2] The Department had received a referral when Kevin was intoxicated and at a hospital late at night and had the children with him and a second referral when the family was about to be evicted. The Department discovered that the children were not enrolled in school, were behind academically, did not have a place to live, and had witnessed ongoing domestic violence between Kevin and his girlfriend. On May 25, 2012, the Department filed its original petition seeking conservatorship of the children ("2012 case"). *In re Gordon*, No. 03-14-00072-CV, 2014 WL 1279740, at *1 (Tex. App.—Austin Mar. 28, 2014, orig. proceeding) (mem. op.). The Department alleged neglect and neglectful supervision, that Kevin was emotionally disturbed and abusing alcohol, and that the children were not enrolled in school or being properly educated by Kevin. *Id.* The trial court signed an order granting temporary conservatorship to the Department that same day. *Id.*

A couple of months later, the trial court signed temporary orders setting May 27, 2013, as the dismissal date for the suit. *Id.*; *see also* Tex. Fam. Code § 263.401(a) (establishing that trial court "shall dismiss the suit" on first Monday after first anniversary of date that trial court appoints Department as temporary managing conservator unless trial on merits has commenced or statutory extension has been granted).[3] In March 2013, the trial court signed an order

---

[2] The children's mother had died in 2009.

[3] The Legislature amended Section 263.401 in 2015 to add Section (b-1), effective September 1, 2015. Section (b-1) establishes the procedure that a trial court must follow if, after the initial trial on the merits was commenced within the statutorily required time, the trial court grants a motion for new trial or mistrial, or the case is remanded to the court by an appellate court following

extending the dismissal date to November 23, 2013.  *In re Gordon*, 2014 WL 1279740, at *1; *see also* Tex. Fam. Code § 263.401(b) (allowing trial court to extend dismissal date up to 180 days from one-year anniversary if "extraordinary circumstances" require Department to remain as temporary managing conservator and if continuing Department's appointment is in child's best interest).

After a trial in July 2013, the jury returned a verdict finding that Kevin's parental rights should not be terminated, that the Department should be appointed sole managing conservator of the children, and that Kevin should be appointed possessory conservator of the children.  The Department and attorney ad litem filed a joint motion for new trial, arguing that the jury's verdict was against the great weight and preponderance of the evidence.  *In re Gordon*, 2014 WL 1279740, at *1.  The trial court signed an order granting the motion for new trial and set a new trial to begin on September 23, 2013.  *Id.*  On September 9, Kevin filed a document styled a "Notice of Appeal/Petition for Writ of Mandamus" stating that he would be seeking mandamus relief from this Court.  *Id.*  On September 12, he filed an agreed motion for continuance of the September 23 trial date, explaining that he intended to seek mandamus relief.  *Id.*

On November 1, Kevin filed his petition for writ of mandamus in this Court ("Kevin's first request for mandamus relief").  *Id.*  The Department and the attorney ad litem filed responses on November 14.  *Id.*  No one informed this Court that the case's statutory dismissal date

an appeal of the trial court's final order.  The amended statute requires the trial court to retain the suit on its docket and render an order setting a new dismissal date, which must be a date not later than the 180th day after the date on which the motion for new trial or mistrial is granted or the appellate court remanded the case.  We cite to the current version of the statute for convenience because this intervening amendment is not material to our disposition of this appeal.

3

was November 23, 2013. *Id.* This Court denied Kevin's first request for mandamus relief on December 11, 2013. *Id.*

After this Court issued its opinion, the trial court set a new trial date for February 10, 2014. *Id.* at *2. On January 10, Kevin filed a motion to dismiss asserting that the suit was set for a date past the extended dismissal date of November 23, 2013, in violation of the statute. *Id.* The trial court denied Kevin's motion, and he subsequently filed his second request for mandamus relief. *Id.* This Court concluded that "[u]nder the clear and unequivocal language of sections 263.401 and 263.402, the trial court was required to dismiss the suit when it lingered on the court's docket beyond 180 days after May 27, 2013 [i.e., past November 23, 2013], and the parties could not agree to extend the deadline beyond that date." *Id.* at *4. Accordingly, the Court conditionally granted Kevin's request for mandamus relief, noting that writ would issue only if the trial court did not enter an order dismissing the suit. *Id.*

On April 9, 2014, the trial court held a hearing at which it dismissed the 2012 case. In its order, the trial court found "that it is not in the best interest of the children for the case to be dismissed" but that it was necessary to dismiss the case based on this Court's opinion. At the same hearing, the Department filed its petition in the cause number underlying this appeal, No. D-1-FM-14-002010 ("2014 case"), seeking to terminate Kevin's parental rights. In its petition, the Department sought to have the trial court set the case for a hearing on temporary orders, including an order naming the Department as temporary managing conservator. In connection with its petition and request for a show-cause hearing, the Department submitted an affidavit from the children's CPS caseworker, Candace Henson, who had been assigned the children's case in

4

December 2013. In her affidavit, Henson attested to both the Department's original reasons for seeking removal of the children and to its April 2014 reasons for seeking to retain temporary managing conservatorship. The Department was not granted emergency temporary managing conservatorship on April 9, but the trial court ordered the children to remain with their foster placement until the court conducted an adversary hearing on May 15, 2014.

Kevin, Henson, and CASA all testified at the May 2014 hearing. After hearing the evidence, the trial court granted temporary managing conservatorship to the Department. In addition, the trial court ordered Kevin to:

- participate in a psychological evaluation and follow the recommendations of the evaluation;
- participate in individual therapy and follow the recommendations;
- participate in a substance-use assessment and follow the recommendations;
- engage in trauma-informed parenting training;
- cooperate with the Department;
- not use drugs or alcohol;
- submit to random drug testing as requested;
- complete protective-parenting training; and
- maintain employment and provide proof to the Department.

On April 13, 2015, the trial court began a two-day bench trial on the merits. Kevin filed a motion to dismiss on the first day of trial, asserting that the case should be dismissed because the Department's petition in the 2014 case did not allege new statutory grounds and because it was filed on the same date that the 2012 case was dismissed, so there was not enough time between the dismissal of the 2012 case and the petition in the 2014 case for new facts to develop. The trial court heard argument on the motion. The Department responded that there is no requirement to plead new grounds for termination, only that there must be new facts on which to base termination, and that the

5

new facts that it alleged were everything that had happened from the time that the Department was granted temporary managing conservatorship in 2012 until the date of the 2015 trial. Kevin also argued that Family Code Section 161.004 should apply to this case. Section 161.004 allows the trial court to terminate a parent–child relationship after rendition of a previous order denying termination if certain requirements are met, including a material and substantial change in the circumstances of a party since the date that the order denying termination was rendered. Tex. Fam. Code § 161.004. At the close of trial, the trial court found that there was no previous order denying termination because the 2012 case was ultimately dismissed after the motion for new trial had been granted, and therefore Section 161.004 did not apply to the 2014 case. The trial court also found that there were new facts in the 2014 case that allowed the Department to proceed with the second termination case.

At trial, in addition to evidence about Kevin's lack of effort to communicate with the children and his failure to accomplish the goals on his family-service plan, which we discuss in more detail below as it is relevant to Kevin's issues on appeal, the trial court heard evidence related to the children's placements and progress made since the Department removed them. The trial court heard testimony from the original CPS investigator, the clinical psychologist who evaluated both children in August 2012 and evaluated Katie in December 2013, the psychologist who evaluated Kevin in August 2012, the children's therapist from January 2013 to October 2014, the children's foster parents at the time of trial, the CASA volunteer, the CASA supervisor, and Henson (the CPS caseworker since December 2013). Henson and the children's foster parents also testified about the Department's post-termination plans for the children to be adopted by the foster family with whom they had been placed for the past year. Kevin did not attend the trial, and his counsel did not offer

6

any evidence at trial. After the close of evidence, the trial court ordered termination of Kevin's parental rights, finding by clear and convincing evidence that termination was in the children's best interest and that Kevin had committed the following statutory grounds for termination: (1) he constructively abandoned the children who had been in the temporary managing conservatorship of the Department for not less than six months and (2) he failed to comply with provisions of a court order that specifically established actions necessary for him to obtain return of the children. *See* Tex. Fam. Code § 161.001(1)(N), (O), (2). This appeal followed.

**ANALYSIS**

On appeal, Kevin asserts that the trial court should have dismissed the case based on his argument that the Department's 2014 suit did not allege new facts. He asserts that the Department did not present any new facts supporting grounds for termination that occurred after the 2012 petition's dismissal and that any facts the Department alleged had already been considered in the 2012 suit. He further contends that because his parental rights were not terminated in the 2012 suit and no new facts were alleged to warrant the 2014 suit, the evidence supporting the termination finding in the 2014 suit is legally and factually insufficient.

Kevin acknowledges that the Department may file a second suit based on the same statutory grounds for termination that were alleged in the first suit, but he contends that new facts must be alleged to support those grounds and that "these new facts must have occurred after the last adverse hearing," relying on *In re Ruiz*, 16 S.W.3d 921, 927 (Tex. App.—Waco 2000, orig. proceeding). That is not an entirely accurate summary of the holding in *In re Ruiz*, however. In that case, the court determined that although the Department could file a second case asserting the same

7

grounds for termination after a first case is dismissed under Section 263.401, the Department needed to assert "new facts" to support removing the children from the parents or keeping them in foster care—facts which had occurred after the adversary hearing appointing the Department as temporary managing conservator in the first case, not facts which occurred after the first case was dismissed. *Id.* This Court and other courts of appeals that have addressed this issue have also required the Department to assert a new factual basis to retain custody of a child after the dismissal of a case under Section 263.401, but none of these courts have required the new facts to have occurred after the first case's dismissal.[4] *See, e.g.*, *D.M. v. Texas Dep't of Family & Protective Servs.*, No. 03-12-00826-CV, 2013 WL 3013875, at *3 (Tex. App.—Austin June 14, 2013, no pet.) (mem. op.) (comparing petitions and determining new grounds had been alleged in second petition);

---

[4] Although we need not reconsider our previous reliance on authority from other courts requiring the Department to allege new facts, given the ample new facts alleged and admitted by the Department in this case, there is support for an alternate view that the Department need not allege new facts to retain custody of children in its care when filing a second suit. Although the Texas Supreme Court has not directly addressed this issue, Chief Justice Hecht expressed his opinion about whether allegations of new facts are required in his dissent in a case concerning the related issue of whether a particular case should have been dismissed after a motion for new trial had been granted (under the prior version of the statute requiring dismissal if no final order had been rendered by the deadline). He opined that the appellate courts are incorrect in holding that the Department must allege new facts because, as he explains, a dismissal under Section 263.401 is without prejudice and "[w]ithout prejudice is without prejudice." *In re Department of Family & Protective Servs.*, 273 S.W.3d 637, 654 (Tex. 2009) (orig. proceeding) (Hecht, J., dissenting). Moreover, "Section 263.401 does not suggest that the Department should be prohibited from refiling suit to protect a child." *Id.* Justice Hecht further explains that the appellate courts' concern that the Department would be able to indefinitely maintain custody of children in its care by annually refiling suit is unfounded because the trial court has ample authority to impose sanctions if the Department acts without sufficient grounds. *Id.* at 654 & n.23 (citing Tex. R. Civ. P. 13; Tex. Civ. Prac. & Rem. Code §§ 10.001, .004(a)). As long as the Department has factual and legal grounds for its suit, Justice Hecht concludes, nothing precludes it from refiling the same action after a dismissal under Section 263.401.

8

*In re K.Y.*, 273 S.W.3d 703, 708 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (concluding that allegations in third suit were based on facts that occurred during pendency of second suit); *In re M.N.G.*, 147 S.W.3d 521, 528 (Tex. App.—Fort Worth 2004, pet. denied) (concluding that new facts alleged to have occurred after Department had been appointed temporary managing conservator of child supported new petition); *In re L.J.S.*, 96 S.W.3d 692, 694 (Tex. App.—Amarillo 2003, pet. denied) (concluding Department averred new facts arising after first suit was filed even though some involved continuation of conduct precipitating first suit); *cf. In re T.M.*, 33 S.W.3d 341, 347 (Tex. App.—Amarillo 2000, no pet.) (upholding trial court's denial of Department's temporary emergency relief because Department's second petition admittedly averred same grounds as its previously dismissed petition and trial court determined purportedly new facts were not new but were part of ongoing trial with parents and intervenor from which Department had been dismissed).

In Kevin's case, while the Department alleged some of the same statutory grounds for termination in the 2014 petition that had been alleged in the first amended petition in the 2012 case,[5] at the May 2014 adversary hearing in the second case, the Department introduced evidence of new circumstances not in existence when the 2012 petition was filed. Those new circumstances included new allegations of abuse that the Department was not aware of in 2012, the children's mental-health needs that became apparent during the pendency of the 2012 case, Kevin's inconsistency in participating in visitation with the children before the July 2013 trial, his lack of effort to communicate with the children since the trial court ordered no visitation in August 2013,

---

[5] The first amended petition is the only petition from the 2012 case in the appellate record for this case.

9

his lack of contact with the Department following the July 2013 trial, his failure to avail himself of any of the services in which the trial court had ordered him to participate during the 2012 case, the Department's concern that Kevin could not provide a safe and stable home based on his lack of participation in services, and his failure to allow the Department access to his home. Additional evidence of these circumstances was admitted at the 2015 trial. We hold that the trial court did not err in denying Kevin's motion to dismiss the 2014 petition for termination because the Department alleged new circumstances supporting removal of the children and evidence of new facts was admitted at both the May 2014 adversary hearing and at the 2015 trial. *See D.M.*, 2013 WL 3013875, at *3 (upholding trial court's denial of parent's motion to dismiss petition because new grounds were alleged in petition and evidence of new facts was admitted at trial); *In re L.J.S.*, 96 S.W.3d at 694 (upholding trial court's dismissal of parents' motion to dismiss because Department alleged new facts warranting termination and parents did not establish on appeal that facts presented at trial in second suit were same as facts underlying first suit). We overrule Kevin's first issue on appeal.[6]

Kevin also contends that because his parental rights were not terminated in the 2012 suit and the Department did not allege new facts to support the 2014 termination proceeding, the evidence to support the termination is legally and factually insufficient. Beyond this contention, however, Kevin does not offer argument or supporting authority in his appellate brief addressing any

---

[6] To the extent that Kevin also argues that the trial court should have found that Section 161.004 applies to this case, we agree with the trial court that Section 161.004 does not apply because the 2012 petition was not denied; instead, the case was dismissed. *See* Tex. Fam. Code § 161.004.

of the new facts that the Department presented at the May 2014 adversary hearing or the April 2015 trial. He does not explain why none of these facts were truly new or why none of them independently warrant the relief sought by the Department in the 2014 suit. In fact, he does not discuss any of the evidence about new facts presented at trial, except to state in his statement of facts that Henson testified about the new facts in the 2014 petition and "[o]n cross examination each of the new facts was known by the Department in the first termination suit and prior to the July 2013 jury trial."

As explained above, the Department was required to assert new facts supporting removal and continued conservatorship, and the relevant time period for those facts was the period after the hearing in the 2012 suit at which the Department was granted temporary managing conservatorship, not the period after the 2013 trial or the period between dismissal of the 2012 suit and filing of the 2014 suit. Kevin's cross examination of Henson focused on facts that were known to the Department before the 2013 trial and which testimony in the 2013 trial supported. The gist of Kevin's argument appears to be that because the Department presented evidence in the 2013 trial of the children's mental-health issues, its concern that the children suffered some sort of abuse, and Kevin's inability to provide a safe and stable environment, and that evidence did not result in termination at the 2013 trial, then that evidence is both insufficient to support termination in the 2015 trial and not new facts.

We have already held that the Department alleged new facts supporting removal. Kevin offers no legal authority to support the proposition that because the 2012 suit was dismissed without a final termination order, the evidence presented at the 2013 trial is insufficient to support

11

termination in the 2014 suit. The trial court's grant of the Department's motion for new trial had the legal effect of reinstating the 2012 suit as though no trial occurred, *see In re Department of Family & Protective Servs.*, 273 S.W.3d 637, 644 (Tex. 2009) (orig. proceeding), and the 2012 suit was subsequently dismissed. Thus, the fact that there was no final termination order in the 2012 suit does not speak to the sufficiency of the evidence presented at either trial. Moreover, Kevin's argument ignores certain crucial new evidence presented by the Department at the 2015 trial about the grounds for termination (constructive abandonment and failure to perform services) and the children's best interest.

To show constructive abandonment, the Department had to establish that Kevin:

> constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than six months, and:
>
> (i)     the department has made reasonable efforts to return the child to the parent;
>
> (ii)    the parent has not regularly visited or maintained significant contact with the child; and
>
> (iii)   the parent has demonstrated an inability to provide the child with a safe environment . . . .

Tex. Fam. Code § 161.001(N). The Department presented evidence supporting each of these elements.

During the 2012 case, Kevin's visitation with the children was inconsistent, he was frequently late when he attended visits, and he attended visits while he was intoxicated. As a result, in August 2013, the trial court stopped Kevin's visitation with the children and conditioned any

future visits on Kevin's participation in court-ordered services. Henson testified that she had explained to Kevin on several occasions after the May 2014 hearing that he could send cards, letters, or photos to the children through her, but he never gave her anything to give them and her understanding was that the only time he ever sent letters to the children was in December 2013.[7] By the time of trial, Kevin had not had any form of contact with the children for about a year and eight months. Henson also explained that Kevin never met the requirement to restart visitation by engaging in services, despite the fact that she put all his referrals for the court-ordered services in place immediately after the May 2014 hearing and on the following day sent him and his attorney a completed plan of service with contact and location information for each service. She testified that she contacted Kevin 15 or more times via multiple methods of communication to attempt to talk to him about what was expected of him and where he needed to go. She had also attempted to work with him after the case was assigned to her in December 2013 until the May 2014 hearing. During that time, when she asked to see his house, although he told her she would be able to see it if she arranged it with his attorney, she attempted to arrange a visit but was never able to do so. As a result, she did not know at the time that the 2014 petition was filed whether his home was a safe, stable environment for the children. During the pendency of the case, Kevin never allowed the child advocates or Henson access to his home, so no one was ever able to assess the safety of the environment.

---

[7] Those letters were not turned over to the children because they contained content that was deemed inappropriate for the children—"a little bit of shaming the children and blaming them for the situation." It is not clear from the record whether anyone at the Department ever told Kevin that those letters were inappropriate and that they had not been given to the children.

The Department also presented evidence that Kevin "failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child[ren]" who have been in the conservatorship of the Department for not less than nine months after being removed for abuse or neglect. *Id.* § 161.001(O). After the May 2014 hearing, Kevin had been ordered to:

- participate in a psychological evaluation and follow the recommendations of the evaluation;
- participate in individual therapy and follow the recommendations;
- participate in a substance-use assessment and follow the recommendations;
- engage in trauma-informed parenting training;
- cooperate with the Department;
- not use drugs or alcohol;
- submit to random drug testing as requested;
- complete protective-parenting training; and
- maintain employment and provide proof to the Department.

At one point during the case, the trial court also ordered Kevin to grow his hair to an inch in length for drug-test purposes. The trial court also ordered him to allow the child advocates access to his home and to turn over some photo albums that the children wanted.

Kevin never had a psychological evaluation in the 2014 case. He also did not participate in individual therapy, a substance-use assessment, protective parenting training, trauma-informed parenting training, and he never provided the Department with proof that he was employed. He never turned over any photos. Kevin submitted to only two random drug tests. He tested positive for cocaine on one and tested negative for all substances on the second one. Both tests were urinalysis tests. He was also requested to submit to hair-strand testing on both of those dates, but on the first date, he did not have a hair sample that could be taken, and on the second date,

14

he refused to submit to the test. He was later ordered specifically to participate in a hair-follicle test by a date certain, and he did not. Henson did not know if he ever grew his hair out at least one inch. Partial compliance with the court's order on drug testing comes nowhere close to complying with the court's extensive orders establishing the actions that Kevin needed to take to obtain the return of his children. *See, e.g.*, *L.Z. v. Texas Dep't of Family & Protective Servs.*, No. 03-12-00113-CV, 2012 WL 3629435, at *9 (Tex. App.—Austin Aug. 23, 2012, no pet.) (mem. op.) (explaining that Texas courts have held that even substantial compliance is not sufficient to avoid termination for failure to comply with service plan and upholding trial court's finding of failure to comply based on parent's completion of some plan goals but failure to achieve others).

Reviewing all the evidence in the light most favorable to the termination findings, we conclude that a reasonable factfinder could have formed a firm belief or conviction as to the truth of the termination findings under Section 161.001(1)(N) and (O), and therefore, the evidence supporting those findings is legally sufficient. *See In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). Considering the entire record in a neutral light, including the lack of disputed evidence, we conclude that the disputed evidence that a reasonable factfinder could not have credited in favor of the termination findings under Sections 161.001(N) and (O) is not so significant that a factfinder could not reasonably have formed a firm belief or conviction as to the truth of these findings, and therefore, the evidence is factually sufficient. *See id.* We overrule Kevin's second issue.

Kevin's challenge to the sufficiency of the evidence supporting the trial court's best-interest finding also fails. In a parental-termination case, the best interest of the children is assessed using a non-exhaustive list of factors. *See Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976).

15

These factors include (1) the children's wishes, (2) their emotional and physical needs now and in the future, (3) emotional or physical danger to the children now and in the future, (4) the parenting abilities of the parties seeking custody, (5) programs available to help those parties, (6) plans for the children by the parties seeking custody, (7) the stability of the proposed placement, (8) the acts or omissions of the parent that indicate that the existing parent–child relationship is not proper, and (9) any excuses for the acts or omissions of the parent. *See id.* at 372. The Department need not prove all eight *Holley* factors supporting termination as a "condition precedent" to termination, and the absence of evidence related to some factors does not preclude the factfinder from finding by clear and convincing evidence that termination is in the children's best interest, especially when there is undisputed evidence that the parental relationship endangered the child. *See In re C.H.,* 89 S.W.3d 17, 27 (Tex. 2002). While no one factor is controlling, analysis of a single factor may be adequate in a particular factual situation to support a finding that termination is in the best interest of the children. *See In re J.O.C.,* 47 S.W.3d 108, 115 (Tex. App.—Waco 2001, no pet.), *disapproved of on other grounds by In re J.F.C.*, 96 S.W.3d at 267 & n.39. In addition, evidence of acts or omissions under Section 161.001(1) may also be probative as to the best interest of the children. *In re C.H.*, 89 S.W.3d at 28.

The Department presented evidence supporting all of the *Holley* factors, except for any excuses for the acts or omissions of the parent. The evidence showed that at the time the children were removed from Kevin, they were not in school and were academically very far behind their expected grade levels, they did not have stable housing, and they had been exposed to domestic violence between Kevin and his girlfriend. There was evidence that both children had serious

16

emotional and mental-health needs when they were evaluated in August 2012. Only seven years old at the time of removal, Michael had to be hospitalized in summer 2012 when he expressed suicidal feelings. He was diagnosed with major depressive disorder and neglect and physical abuse of a child. When under stress, he would either "shut down" and completely stop talking and responding or he would act out by refusing to follow directions, leaving home and walking out into the street, crying, or yelling. Katie, who was ten years old at the time of removal, was diagnosed with post-traumatic stress disorder, prolonged depressive disorder, and neglect of a child. Katie attempted suicide in December 2012.

Although the children's first three foster placements did not last long, they subsequently had two longer-term, more stable foster placements. By the time of trial, the children had been living with the same foster family (the "Browns") since April 2014, but their prior foster family had been neighbors of the Browns, so they had known the family for almost two years since moving into the neighborhood in August 2013. There was testimony from multiple witnesses that the children were bonded to the Browns and their biological children, a 15-year-old boy and a 13-year-old girl living in the home and a 23-year-old boy who was no longer at home. Henson testified to the close relationships that she had observed among the siblings and to the attentiveness of the parents. She further testified that both children seem really comfortable and secure in the home. The Browns expressed their desire to adopt the children and their commitment to helping them with any long-term needs. CASA and the Department both had adoption by the Browns as their goal for the children, and both children had expressed that they wished to remain with the Browns and be in their family forever. Michael had not expressed any wish to see Kevin. Katie had

17

expressed the desire to see Kevin for a one-time meeting to tell him that she will always love him even though "[h]e makes bad choices," but she is clear that she does not want to have ongoing contact with him. She has said, "I know my dad can't take care of me. I wish he could try harder, but he can't."

Over the period of time since their visits with Kevin stopped and they have been placed with the Browns, the children have made considerable progress both emotionally and academically. Both children attended counseling and saw the same counselor from January 2013 until October 2014. By October 2014, they had improved enough to discontinue counseling. Michael is much calmer and more in control of his physical behavior. He has been diagnosed with ADHD and is being treated by a doctor. His "meltdown" episodes are much less frequent and much less severe. Michael is performing close to grade level in fourth grade, passing every subject except reading. He is getting tutoring help, and his foster parents are in daily contact with the teacher about his progress. In 2013, Katie went from performing at a second-grade level of achievement in 2012 to an almost seventh-grade level in reading, a fifth-grade level in spelling, and an almost fifth-grade level in math. At the time of trial, she was in seventh grade and performing at grade level. She was also participating in dance and drill-team extracurricular activities. The CASA volunteer testified that the biggest impact on Katie has been that "she doesn't have to act as [Michael's] mom any more" because he is doing so much better and they both have parents that they can rely on. Now "[s]he can concentrate on things that are important to her, like her friends, schoolwork and her family." The CASA volunteer further testified that the children had improved to the point where they did not want or need CASA around to help them anymore—"[t]hey want to simply live their

18

lives, go to school, play sports, have fun." Henson also testified that the children do not want to continue to have the Department involved in their lives.

The children's therapist testified that both children need a stable, emotionally responsive environment with consistent caregivers. The CASA volunteer and Henson both testified that termination of Kevin's parental rights would contribute to the stability and well-being of the children and was in their best interest. Viewing the evidence related to the *Holley* factors in the light most favorable to the trial court's finding, we conclude that the evidence is legally sufficient to prove that termination of Kevin's parental rights was in the children's best interest. *See Holley*, 544 S.W.2d at 372. Considering the entire record in a neutral light, including the lack of disputed evidence, we conclude that the evidence is factually sufficient to support the trial court's finding that termination of Kevin's parental rights is in the best interest of the children. *See In re J.F.C.*, 96 S.W.3d at 266. We overrule Kevin's third issue on appeal.

**CONCLUSION**

Having concluded that the trial court did not err by denying Kevin's motion to dismiss and that sufficient evidence supports the trial court's findings that (1) Kevin had constructively abandoned the children and (2) had failed to participate in court-ordered services and (3) terminating Kevin's parental rights was in the children's best interest, we affirm the trial court's order of termination.

_____

        Cindy Olson Bourland, Justice

Before Justices Puryear, Goodwin, and Bourland

Affirmed

Filed:   November 9, 2015