# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---
## NO. 03-20-00481-CV
---

### L. C. and S. B.-N., Appellants

### v.

### Texas Department of Family and Protective Services, Appellee

---
### FROM THE 146TH DISTRICT COURT OF BELL COUNTY
### NO. 302,716-B, THE HONORABLE ALAN MAYFIELD, JUDGE PRESIDING
---


## M E M O R A N D U M   O P I N I O N


L.C. and S.B.-N. appeal from the trial court's final order that (a) terminated L.C.'s parental rights to her son, Kevin[1] (age seven); (b) appointed a relative as the permanent managing conservator of S.B.-N.'s son, Michael (age eleven); (c) appointed the father of S.B.-N.'s son, Colin (age one), as the child's managing conservator; and (d) granted S.B.-N. supervised visitation of Michael and Colin.[2]  L.C. and S.B.-N. challenge the trial court's denial of a jury trial, and L.C. additionally challenges the evidentiary sufficiency supporting termination of her parental rights.  For the following reasons, we will reverse the trial court's final order as to S.B.-N. and L.C. and remand this cause for a new trial.

---

[1] We refer to appellants by initials and the children by pseudonyms to protect the children's privacy.  *See* Tex. R. App. P. 9.8(b).

[2] The trial court's order also terminated the parental rights of Kevin's father, but he does not appeal.  Michael's father was deceased at the time of trial.

BACKGROUND

In 2014, a court in Harris County appointed S.B.-N. permanent managing conservator of her nephew, Kevin. The order granted the child's mother, L.C., limited visitation rights. Following that case, S.B.-N. lived in Austin with Kevin and S.B.-N.'s two children, Michael and Colin.

On August 18, 2018, the Department of Family and Protective Services received a report from Kevin's school that the five-year-old showed signs of physical abuse. A Department investigator interviewed school staff the same day. Kevin's teacher reported that she noticed scratches and bruising on the child's face. Kevin told his teacher that he "caught a whoopen" from S.B.-N. because the teacher had called to report his misbehavior in class. The school nurse discovered extensive scratches and bruising on Kevin's neck, back, and chest. An independent medical examination performed at the Department's request found "significant new and old bruising" on Kevin's inner and outer thighs, feet, back, and upper chest. S.B.-N. told the investigator that she "whooped [Kevin] yesterday for acting up in school" but expressed surprise at the extent of the injuries.

The Department gained temporary custody of the three children and petitioned to terminate the rights of both mothers. Kevin and Michael were placed in foster care, and Colin was placed with a relative. S.B.-N. participated in the case from the beginning, but the Department did not serve L.C. until January 2019. At the time, the automatic-dismissal date for the case was September 2, 2019. *See* Tex. Fam. Code § 263.401(a), (c) (requiring Department to prosecute suit affecting parent-child relationship within twelve-month period and allowing one 180-day extension). In an order signed August 20, 2019, the trial court granted L.C.'s motion to extend the suit for 180 days, determined that the new automatic-dismissal date was February 17,

2020, and set the case for final trial on January 21, 2020. In a September 6, 2019 docket-control and scheduling order, the trial court set a deadline for jury requests of October 29, the date of the second permanency hearing. S.B.-N. filed a jury demand on October 8. On December 16, the district clerk sent the parties notice that the case had been "reset for FINAL HEARING" on January 14, 2020. On December 20, 2019, S.B.-N. filed a Motion to Set Trial for Jury. In the motion, S.B.-N. requested that the trial court "hear this matter by submission" because she had attempted to set it for a hearing on December 17 but was "told by the Court that the docket was full."

The trial court took up S.B.-N.'s motion to set the case for jury trial at the beginning of trial on January 14, 2020. L.C.'s attorney informed the court that L.C. was "joining" in S.B.-N.'s motion. The Department urged the trial court to deny the motion, arguing that the jury demand was "untimely" pursuant to local rules and that there was not "a lot of time" to conduct a jury trial before the dismissal date. S.B.-N.'s counsel responded that the remaining timeframe was "not [her] client's fault and should not be held against her right to a jury trial." The trial court stated that "the request for jury trial was not timely filed under the local rules" and that "there have been hearings since [the jury demand] was filed [but t]he issue was not presented to the Court at that time." The trial court concluded, "I find that [the jury demand] is untimely and deny the motion for jury trial." The trial court proceeded to trial on the merits.

The Department asked the trial court to terminate L.C.'s rights to Kevin but dropped its request to terminate S.B.-N.'s rights to her children. Instead, it asked the trial court to appoint the relative caring for Michael as his permanent managing conservator and to appoint Colin's father as his permanent managing conservator; the Department also asked that S.B.-N. be granted supervised visitation of her two children. At the end of the first day of trial, the trial

3

court reset the trial to resume on February 10, 2020. For reasons that are not clear from the record, trial resumed instead on August 10, 2020. Over the two total days of trial, the trial court heard testimony from the Department's caseworker, S.B.-N., L.C., the children's guardian ad litem, L.C.'s godmother, and Colin's father. The trial court rendered judgment finding by clear and convincing evidence that L.C. had committed two statutory grounds for termination and that termination was in the best interest of Kevin, *see* Tex. Fam. Code § 161.001(b)(1)(N), (O), (b)(2); appointing Michael's caretaker as his permanent managing conservator; and appointing Colin's father as his permanent managing conservator. L.C. and S.B.-N. each filed notice of appeal.

## DISCUSSION

### *The trial court's denial of S.B.-N.'s request for jury trial*

We first address S.B.-N.'s sole appellate issue because we find it dispositive of L.C.'s three issues as well. S.B.-N. contends that the trial court abused its discretion in denying her request for a jury trial, which ruling we review for abuse of discretion. *See In re A.L.M.-F.*, 593 S.W.3d 271, 282 (Tex. 2019); *E.E. v. Texas Dep't of Fam. & Protective Servs.*, 598 S.W.3d 389, 395 (Tex. App.—Austin 2020, no pet.). The test for abuse of discretion is whether the trial court's decision was "arbitrary, unreasonable, and without reference to guiding principles." *A.L.M.-F.*, 593 S.W.3d at 282 (quoting *Mercedes-Benz Credit Corp. v. Rhyne*, 925 S.W.2d 664, 666 (Tex. 1996)).

As in *E.E. v. Texas Department of Family and Protective Services*, this case "involves two of the most sacred and precious rights protected by law—the right of a parent to the 'companionship, care, custody, and management of her child,' . . . and the right of a litigant to a jury trial." 598 S.W.3d at 395–96 (citations omitted). We therefore "closely scrutinize" the

4

trial court's denial of a jury trial. *See id.* at 396. Also, the wrongful denial of a jury trial is presumed harmful unless the record demonstrates there were no genuine issues of fact to present to a jury. *Id.* at 399.

It is well established that to perfect one's right to a jury trial in a civil case, a jury demand must be filed in writing within a "reasonable time before the date set for trial of the cause on the non-jury docket, but not less than thirty days in advance," Tex. R. Civ. P. 216; *see E.E.*, 598 S.W.3d at 396. However, if a pretrial scheduling order establishes a different deadline for filing a jury demand, the scheduling order controls. *E.E.*, 598 S.W.3d at 396. Because S.B.-N. filed her jury demand on October 8, 2019—nearly three weeks before the deadline specified in the scheduling order (October 29, 2019)—we conclude that the demand was timely filed.[3] *See id.*

Despite the timeliness of S.B.-N.'s jury demand, the Department contends that the trial court properly denied the demand because (1) S.B.-N. neither paid the requisite jury fee nor filed an official affidavit of indigency, *see* Tex. R. Civ. P. 216(b), 217, and (2) S.B.-N.'s "repeated silence before the trial court about her request for a jury trial was subterfuge designed to deny the trial court jurisdiction over this case in order to avoid a fair determination of the merits of the Department's concerns." As to the former argument, we conclude that S.B.-N. perfected her right to a jury trial. First, her jury demand states that she "requests the jury fee be waived" under Rule 217 because she was previously found to be indigent by the judge in the Harris County case. Secondly, her indigency was apparently not disputed. When this case began, an associate judge signed temporary orders finding that S.B.-N. was an "indigent parent"

---

[3] Although at trial the Department and court made reference to "local rules" under which the jury demand was purportedly "untimely," the Department has not provided a citation to any local rule providing a jury-demand deadline, and we have not found one.

and that she should be appointed counsel. *See* Tex. Fam. Code § 107.013(a)(1) (requiring trial court to appoint attorney ad litem to represent interests of "an indigent parent of the child who responds in opposition to the termination or appointment"). In light of these circumstances, we decline to hold that S.B.-N. failed to perfect her right to a jury trial because she did not file an affidavit of indigence under Rule 217. *See G.W. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-14-00580-CV, 2015 WL 658466, at *3 (Tex. App.—Austin Feb. 11, 2015, no pet.) (mem. op.) (holding in similar circumstances that indigent parent's jury demand was timely despite failure to file affidavit of indigence).

Because S.B.-N. perfected her right to a jury trial by timely filing her demand, the Department was required to prove that conducting a jury trial would have disrupted the court's docket, impeded the ordinary handling of the court's business, or injured the Department in some way to overcome S.B.-N.'s perfected right. *See A.L.M.-F.*, 593 S.W.3d at 283 ("When a jury trial is available as a matter of right, a timely request is presumptively reasonable and ordinarily must be granted absent evidence that granting the request would '(1) injure the adverse party, (2) disrupt the court's docket, or (3) impede the ordinary handling of the court's business.'" (quoting *Halsell v. Dehoyos*, 810 S.W.2d 371, 371 (Tex. 1991))); *see also* Tex. R. Civ. P. 220 (providing that cause may not be removed from jury docket over party's objection); *E.E.*, 598 S.W.3d at 397 (noting that even if jury demand is untimely, court must conduct jury trial if it can be done without interfering with court's docket, delaying trial, or injuring opposing party (quoting *General Motors Corp. v. Gayle*, 951 S.W.2d 469, 476 (Tex. 1997)); *In re M.A.*, No. 14-05-00579-CV, 2007 WL 2873307, at *2 (Tex. App.—Houston [14th Dist.] Oct. 4, 2007, no pet.) (mem. op.) (While "a party may rebut the presumption [of a timely jury demand] by showing that the granting of a jury trial would operate to injure the adverse party, disrupt the court's

6

docket, or impede the ordinary handling of the court's business . . . [s]uch evidence must appear in the record."). We conclude that the record does not support the trial court's implied determination that conducting a jury trial would have resulted in any of the requisite consequences sufficient to overcome S.B.-N.'s presumptive right to a jury trial. *See M.A.*, 2007 WL 2873307, at *2 (concluding that "there is no evidence rebutting the presumption that the mother's request for a jury trial was made a reasonable time before trial" and that trial court abused discretion in denying request for jury trial).

At the beginning of the January 14, 2020 trial—as the trial court considered S.B.-N.'s motion for jury trial and the parties' arguments—the Department did not put forth any evidence of how it would be injured by a jury trial. The Department argued merely that the jury demand was "untimely" (which argument we have already rejected) and that "the dismissal date on this case is February 17th, and that's, also, a concern because it doesn't give us a lot of time to, actually, get the jury trial." This conclusory argument is insufficient to meet the Department's burden that it would have been injured in some way if the case proceeded to trial by jury. Although in its appellate brief the Department argues that it would have been injured by the "impossibility" of scheduling a jury trial between the final hearing date and the dismissal date because the case would have had to be dismissed without any determination as to the merits, it did not make that argument at the final hearing and the record does not prove that a jury trial could not have commenced before the automatic dismissal date. *See* Tex. Fam. Code § 263.401(a) (providing that trial court's jurisdiction over suit terminates one year after Department is appointed temporary managing conservator unless court grants one 180-day extension or has commenced trial on merits); *In re K.Y.*, 273 S.W.3d 703, 708 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (providing that if suit is dismissed under Section 263.401,

7

Department may refile suit asserting same grounds for termination as originally alleged but cannot maintain temporary custody of children without alleging new facts to support termination); *see also* Tex. Fam. Code § 161.202 (allowing trial court to grant preferential setting for final hearings in termination cases).

We cannot infer from the record before us that the trial court's docket would have been disrupted by resetting the case for trial by jury or that the trial court's business would have been impeded as a result. For instance, neither the trial court nor the Department mentioned the available upcoming jury dates before the automatic dismissal date. Indeed, the trial court noted that it would "be back on February 10th" if any party needed "additional time to get additional witnesses or whatever," which date was seven days before the dismissal date. Apart from the Department's conclusory statement that there was not "a lot of time" to conduct a jury trial before the dismissal date, we find no evidence demonstrating any harm to the Department or disruption to the court were the trial to be reset for a jury trial. Although this Court has recently held that a trial court may also consider whether a delay would be detrimental to the children's best interests, no evidence here supported such consideration. *Cf. S.B. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-20-00373-CV, 2020 WL 7414728, at *2–3 (Tex. App.—Austin Dec. 18, 2020, no pet.) (mem. op.) (concluding that trial court did not abuse discretion in denying jury trial after parent made untimely demand where record contained concrete evidence of undue delay, prejudice to Department, and harm to children). Accordingly, the presumption that S.B.-N.'s jury demand was proper and should have been granted prevails, and we conclude that the trial court abused its discretion in denying a jury trial.

Nevertheless, the Department argues that S.B.-N. effectively waived her right to a jury trial by "lying behind the log" after requesting a jury trial "early in the case" and "appearing

8

to accept a scheduling order that never anticipate[d] the need for a jury trial until the date of the final hearing" when it was "impossibl[e]" to schedule a jury trial before the dismissal date. Initially, we reject the Department's implication that S.B.-N. did anything improper by timely filing a jury demand pursuant to the trial court's own scheduling-order deadline and then "lying behind the log" because—once she perfected her right to a jury trial—she was entitled to proceed as if the clerk's office had properly placed the cause on the jury docket; she was not required to take further action to ensure that right. *See Rhyne*, 925 S.W.2d at 666 (noting that trial court clerk "performs the ministerial duty of placing a case on the jury docket" after party has timely perfected right to jury trial by making jury demand and paying fee and that court may not then remove case from jury docket over opposing party's objection); *see also* Tex. R. Civ. P. 220 (providing that cause may not be removed from jury docket over opposing party's objection).

To support its waiver argument, the Department cites (a) two permanency hearings—on October 15 and October 22, 2019—at which S.B.-N. purportedly did not object to the trial court's setting of the cause for a bench trial, and (b) the fact that S.B.-N. filed her motion to set the case for jury trial on December 20, 2019—only twenty-five days before the case was set for final bench trial on January 14, 2020—and did not seek a hearing on the motion until the trial date. However, the reporter's record does not contain transcripts from the two cited permanency hearings, and we therefore cannot discern whether S.B.-N. "assented" to proceeding with a bench trial, to the extent that such assent could support waiver. *Cf. E.E.*, 598 S.W.3d at 398–99 (identifying two conflicting lines of cases in courts of appeals about whether party may waive right to perfected jury trial by inaction in face of trial court proceeding to trial without jury). Furthermore, the temporary orders entered after those permanency hearings state that "this suit is set for trial on January 21, 2020," without specifying that trial would be to the court.

9

We also disagree with the Department's second waiver complaint—that S.B.-N. waited too long to file and set for hearing her motion to set the case for jury trial. The record demonstrates that on December 16, 2019, the district clerk provided notice to the parties that the case had been reset for "final hearing" to occur on January 14, 2020. Four days later, S.B.-N. filed her motion to set case for jury trial, in which she asserted that she "attempted to set this matter for a hearing on 12/17/19 but was told by the Court that the docket was full . . . [and thus] prays that the Court hear this matter by submission." S.B.-N. appears to have gleaned from the trial court's hearing notice that the court had removed the case from the jury docket and intended to proceed with a bench trial. When she was unsuccessful in timely setting the matter for a hearing, S.B.-N. took up the issue at the beginning of the final trial date. Under the circumstances, we fail to see what more she could have done to indicate to the trial court that she was standing on her perfected right and was not, in fact, waiving it. Furthermore, under either line of cases we identified in *E.E.*, we hold that S.B.-N. preserved her right to a jury trial because (a) her motion to set case for jury trial effectively served as an "affirmative" indication that she intended to stand on her perfected right to a jury trial, and (b) she obtained an adverse ruling on the issue. *See id.*, (comparing cases requiring party to object or affirmatively indicate it intends to stand on perfected right to jury trial to avoid waiver of right with cases merely requiring party to obtain adverse ruling on jury demand to avoid waiver). We, therefore, conclude that the trial court abused its discretion in denying S.B.-N.'s request for a jury trial.

### L.C.'s reliance on S.B.-N.'s jury demand

In her first issue, L.C. similarly complains that the trial court abused its discretion in denying the parties a jury trial and asserts that she preserved error on the issue, even though

10

she did not personally make the jury demand, by joining S.B.-N.'s Motion to Set Trial for Jury and indicating to the trial court that she intended to rely on S.B.-N.'s perfected jury demand. We agree.

When any party perfects a right to a jury trial, that right inures to the benefit of the other parties to the action. *See Brubaker v. Brubaker*, No. 03-18-00273-CV, 2019 WL 6205518, at *3 (Tex. App.—Austin Nov. 21, 2019, no pet.) (mem. op.) (collecting cases). Furthermore, a trial court may not withdraw a case from the jury docket on its own initiative over the objection of any party. *In re J.M.*, No. 12-19-00353-CV, 2020 WL 1528054, at *7–8 (Tex. App.—Tyler Mar. 31, 2020, no pet.) (mem. op.) (in parental-termination case, holding that father was entitled to rely on mother's jury demand and that trial court was not permitted to remove case from jury docket over father's objection); *Bank of Houston. v. White*, 737 S.W.2d 387, 388 (Tex. App.—Houston [14th Dist.] 1987, orig. proceeding) (holding that trial court was not authorized to remove case from jury docket once it has been properly placed thereon if "any party adversely affected objects to such removal"). Because S.B.-N. perfected her right to a jury trial and the cause was thus properly on the jury docket, L.C. was entitled to rely on the perfected right to jury trial, and we conclude that the trial court's explicit ruling on S.B.-N.'s jury demand served also as a ruling on L.C.'s derivative jury demand. *See O'Quinn v. Hall*, 77 S.W.3d 452, 458 (Tex. App.—Corpus Christi–Edinburg 2002, no pet.) (in considering error preservation, holding that trial court's ruling on one party's motion to transfer venue in which another party has joined serves as ruling obtained by joining party even if that party is not expressly mentioned in ruling).

Therefore, L.C.'s challenge to the trial court's ruling is properly before this Court in light of: S.B.-N.'s timely jury demand and the benefit thereof inuring to L.C.; L.C.'s representation to the court that she joined in S.B.-N.'s motion for a jury trial; and the trial court's adverse ruling on the matter. *See* Tex. R. App. P. 33.1 (providing that to preserve error for

11

appellate review, record must demonstrate that party made complaint to trial court by timely request, objection, or motion that stated grounds for requested ruling and that trial court ruled on request or motion); *J.M.*, 2020 WL 1528054, at *9 (holding that father, who expressed intention to rely on mother's jury demand, did not waive right to jury trial by participating in bench trial when he had objected to trial court's striking of mother's jury demand, and he thus preserved error); *see also E.E.*, 598 S.W.3d at 398–99 (concluding that parent preserved right to jury trial by obtaining adverse ruling on jury demand); *Coleman v. Sadler*, 608 S.W.2d 344, 346 (Tex. App.—Amarillo 1980, no writ) (holding that party preserved error and did not waive issue about jury demand where he made timely demand, paid requisite fee, presented demand to trial court, and obtained adverse ruling). Because we have held that the trial court abused its discretion in denying S.B.-N.'s request for a jury trial, it follows that the trial court abused its discretion in denying L.C.'s request also.

### Whether the error was harmful

Having determined that the trial court erred in denying S.B.-N. and L.C. a jury trial, we presume that the error was harmful unless the record demonstrates that there were no genuine issues of fact to present to a jury. *See E.E.*, 598 S.W.3d at 399; *see also Halsell*, 810 S.W.2d at 372 ("A refusal to grant a jury trial is harmless error only if the record shows that no material issues of fact existed and an instructed verdict would have been justified."). The record demonstrates that there are material issues of fact.

At trial, there was conflicting evidence regarding the children's best interest and grounds for termination: Michael's desires and the best placement for him, especially given his medical condition; the extent to which L.C. completed or put forth a good-faith effort to

12

complete her court-ordered services and what efforts the Department made to assist her with completing services, including her requests for visitation with Kevin; and whether S.B.-N. would be an appropriate caregiver for her children based on her past conduct and present circumstances in light of skills she had acquired by participating in court-ordered services. This evidence raised material fact issues such that an instructed verdict terminating L.C.'s parental rights and granting S.B.-N. only supervised visitation, while granting managing conservatorship to Michael's relatives, would not have been justified. *See M.A.*, 2007 WL 2873307, at *3 (holding that conflicting evidence regarding extent of mother's continued drug use, her ability to provide for child, and whether she or grandfather would be better caretaker of child raised fact issues such that instructed verdict would have been improper and, therefore, trial court's refusal to grant jury trial was harmful error); *In re A.S.*, 241 S.W.3d 661, 666 (Tex. App.—Texarkana 2007, no pet.) (holding that wrongful denial of jury trial constituted harmful error in case concerning modification of conservatorship because child's best interest and whether there had been material and substantial changes in circumstances were material fact questions); *In re M.N.V.*, 216 S.W.3d 833, 835 (Tex. App.—San Antonio 2006, no pet.) (holding that testimony from parent that she did not want her rights terminated, and evidence that she had in part completed her family service plan were sufficient to present material issues of fact as to best-interest determination, even in light of evidence of prior drug abuse); *In re J.C.*, 108 S.W.3d 914, 917 (Tex. App.—Texarkana 2003, no pet.) (holding that parent's testimony that termination would not be in best interest of child was sufficient to defeat motion for instructed verdict). Accordingly, we sustain S.B.-N.'s sole issue and L.C.'s first issue and hold that the trial court's denial of a jury trial was harmful error.

13

*Legal sufficiency of evidence to support termination*

Although we have sustained L.C.'s first issue, we must also consider the challenges in her second and third issues to the legal sufficiency of the evidence supporting termination because if we were to sustain either issue, L.C. would be entitled to rendition of judgment rather than remand for a new trial. *See In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002) ("Rendition of judgment in favor of the parent would generally be required if there is legally insufficient evidence."). In evaluating the legal sufficiency of the evidence, we look at "all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *Id.* We "assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so" and "disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.* If after reviewing the evidence, including undisputed evidence that does not support the findings, we conclude that no reasonable factfinder could have formed a firm belief or conviction that the Department carried its evidentiary burden, the evidence is legally insufficient. *Id.*

In her second issue, L.C. challenges the legal sufficiency of the evidence supporting the district court's finding under Subsection (N) but does not address its finding under Subsection (O). *See* Tex. Fam. Code § 161. 161.001(b)(1)(N), (O). However, we will not review the legal sufficiency of the Subsection (N) finding because "[o]nly one predicate finding under Section 161.001(b)(1) is necessary to support a judgment of termination." *See In re N.G.*, 577 S.W.3d 230, 233 (Tex. 2019) (per curiam); *see also J.G. v. Texas Dep't of Fam. & Protective Servs.*, 592 S.W.3d 515, 523 (Tex. App.—Austin 2019, no pet.) (noting that when appellant does

not challenge each predicate finding made by trial court, appellate court need not review unchallenged findings except for those made under Subsection (D) or (E)).

In her third issue, L.C. challenges the legal sufficiency of the evidence supporting the trial court's finding that termination of her parental rights is in Kevin's best interest. *See* Tex. Fam. Code § 161.001(b)(2). Courts use the non-exclusive *Holley* factors to determine the best interest of the child. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). The factors consist of: (1) the child's wishes; (2) the child's present and future emotional and physical needs; (3) any emotional and physical danger to the child, now and in the future; (4) the parenting abilities of the person seeking custody; (5) the programs available to assist these individuals in promoting the best interest of the child; (6) the plans for the child by the individual or agency seeking custody; (7) the stability of the proposed home or proposed placement; (8) the parent's acts or omissions that may indicate that the existing parent-child relationship is not appropriate; and (9) any excuse for the parent's acts or omissions. *Id.*

L.C. contends the evidence is legally insufficient because the Department failed to put on evidence regarding several of the *Holley* factors, such as Kevin's desires and programs available to assist L.C. if she regained custody. But the absence of evidence of some of these considerations does "not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest." *See In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002); *see also L.R.J.M. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-20-00274-CV, 2020 WL 6140307, at *4 (Tex. App.—Austin Oct. 15, 2020, no pet.) (mem. op.) (noting that "[t]he *Holley* factors are not exhaustive, [and] not all factors must be proved" to justify termination). After reviewing the record, we agree that the Department met its burden.

15

The Department did not put on evidence regarding the precise circumstances that led to Kevin's removal from L.C. in 2014, but the children's guardian ad litem testified that Kevin had been diagnosed with post-traumatic stress disorder because of his time with L.C. The district court abated L.C.'s visits until the child's therapist recommended allowing them to resume, but that never occurred. Moreover, L.C. refused to provide the Department with her address. She gave the caseworker the address of her godmother who testified at trial that L.C. had not lived there for months and that L.C. now "lives with her brother in Pasadena." The Department caseworker testified that L.C. told her she can provide for Kevin because she "owns her own business" cleaning houses, but L.C. never complied with the caseworker's request for documentation of her earnings.

Also relevant is L.C.'s lack of progress in treating her mental-health issues. *See In re K.S.O.B.*, No. 01-18-00860-CV, 2019 WL 1246348, at *25 (Tex. App.—Houston [1st Dist.] Mar. 19, 2019, no pet.) (mem. op.) (explaining that "a parent's lack of progress in managing her mental-health conditions is relevant to the best-interest determination"). The caseworker testified that the Department requested that L.C. seek mental-health treatment at My Health My Resources (MHMR) and attend individual counseling. L.C. argues that she passed her psychological evaluation and was successfully discharged from individual counseling. However, the caseworker testified that L.C. was discharged because the therapist believed she was not capable of further progress and could not care for Kevin independently. L.C. told the caseworker that she "was going" to MHMR but the caseworker never received any follow-up reports.

The caseworker testified that Kevin has been in the same foster home since the beginning of this case and that he has shown "continual improvement." She testified that it would be "detrimental" to return him to L.C. The guardian ad litem testified that Kevin is

16

"doing amazing" in his foster home and has made "unbelievable progress" with his behavioral issues. The guardian recommended termination of L.C.'s rights so that Kevin could be adopted by his foster family.

The record, considered in the appropriate light, allows a reasonable factfinder to form a firm belief or conclusion that L.C. would be unable to provide Kevin with a safe and stable home. *See In re F.M.E.A.F.*, 572 S.W.3d 716, 726 (Tex. App.—Houston [14th Dist.] 2019, pet. denied) ("A child's need for permanence through the establishment of a stable, permanent home is the paramount consideration in a best-interest determination."). We therefore cannot conclude that the evidence is legally insufficient to support the trial court's finding that termination of L.C.'s rights is in the best interest of Kevin. We accordingly overrule L.C.'s third issue challenging the legal sufficiency of the evidence and need not address her challenges to the factual sufficiency of the evidence because we have sustained her first issue. *See In re J.O.A.*, 283 S.W.3d 336, 347 (Tex. 2009) (noting that remand for new trial is appropriate judgment when appellate court finds evidence to be factually insufficient); *see also* Tex. R. App. P. 47.1, 47.4.

## CONCLUSION

Having sustained S.B.-N.'s sole issue and L.C.'s first issue by determining that the trial court abused its discretion in denying those parties' rights to a jury trial, and that the error was harmful, we reverse the trial court's final order as to S.B.-N. and L.C. and remand this cause for a new trial by jury. We instruct the district court to commence the trial no later than 180 days after the mandate is issued by this Court. *See* Tex. R. App. P. 28.4(c).

17

_____

Thomas J. Baker, Justice

Before Chief Justice Byrne, Justices Baker and Smith
  Concurring and Dissenting Opinion by Justice Smith

Reversed and Remanded

Filed:   March 26, 2021